In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2790

LIANG CHEN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review from an
Order of the Board of Immigration Appeals.
No. A98 971 887

ARGUED FEBRUARY 17, 2009—DECIDED AUGUST 19, 2009

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Liang Chen is a citizen of China
and an applicant for asylum. He also has been, up until
now, a victim of bad timing. After Chen presented a
claim for asylum based on his wife's involuntary abortion,
the Attorney General changed the government's inter-
pretation of the relevant statute so that a spouse no
longer qualifies as a refugee because his partner suffered

an involuntary abortion. See *Matter of J–S–*, 24 I. & N. Dec. 520, 523-24 (AG 2008). Based on this change of law, the Board of Immigration Appeals ("BIA") dismissed Chen's appeal because, it said, Chen presented no evidence of other persecution or resistance to China's coercive family planning policy. After the oral argument in this case, a different panel of the court followed *Matter of J–S–* and denied a petition for review in a case with similar—though not identical—facts. See *Jin v. Holder*, 572 F.3d 392 (7th Cir. 2009).

We see two critical differences between *Jin* and the present case, as we explain below. Without commenting on the merits of Chen's claim, we conclude that he did not have the opportunity for a fair hearing. Accordingly, we grant Chen's petition for review, vacate the BIA's decision, and remand for further proceedings.

Chen was born in Lianjiang County in Fujian Province, China, in November 1972. His county is one of thirteen administrative divisions of Fuzhou, the capital city of Fujian Province. In April 1996, when he was approximately 24 years old, he married Ye Duan Juan, a woman who was employed by the Chinese Communist Party's Xiaoao Township Committee. As required by China's family planning policy, his wife had an IUD inserted after his son's birth. She regularly went to the local family planning office for mandatory gynecological exams. Chen alleges that during one such exam, in May 1999, the officials discovered that the IUD was missing and that Chen's wife was pregnant. Chen asserts that he and his wife wanted the child, but that the office forced his wife to abort her pregnancy that day.

Five years later, in June 2004, Chen left China and illegally entered the United States in July. In June 2005 he applied for asylum, withholding of removal, and protection under the Convention Against Torture. At the time he applied for asylum, the BIA conferred automatic refugee status on the spouse of a person forced to abort a pregnancy (as well as on the person suffering the forced abortion). See *Matter of C–Y–Z–*, 21 I. & N. Dec. 915 (BIA 1997) (*en banc*); *Matter of S–L–L–*, 24 I. & N. Dec. 1 (BIA 2006); 8 U.S.C. § 1101(a)(42)(B) ("a person who has been forced to abort a pregnancy or to undergo involuntary sterilization" is a refugee and thus entitled to asylum). Chen accordingly based his claims for asylum and withholding of removal on the forced abortion suffered by his wife. He presented evidence to support his claim, including his testimony, his wife's statement, and several documents.

The Immigration Judge ("IJ"), however, found that Chen had not presented a credible story and denied his application. Chen appealed to the BIA on March 13, 2007. A year passed, and then the proverbial rug was pulled out from under Chen's feet. In May 2008, Attorney General Mukasey reversed the BIA's interpretation of § 1101(a)(42)(B). He concluded that a spouse was not entitled to automatic refugee status because of the partner's forced abortion. *Matter of J–S–*, 24 I. & N. Dec. 520 (AG 2008); see also *Jin*, 572 F.3d at [sl. op. 7](explaining the background of *Matter of J–S–*). Under the Attorney General's new position, the spouse must instead prove that he suffered persecution or has a well-founded fear of persecution because of his *own* resistance to China's

coercive population control program. See *id*.; § 1101(a)(42)(B). We have held that the Attorney General acted within his authority when he made this change. See *Jin v. Holder, supra*; see also *Yu v. U.S. Att'y Gen.,* 568 F.3d 1328 (11th Cir. 2009); *Lin-Zheng v. U.S. Att'y Gen.,* 557 F.3d 147, 156-57 (3d Cir. 2009) (*en banc*).

Following *Matter of J–S–,* the BIA dismissed Chen's appeal. Because the BIA issued its own opinion, we limit our review to its opinion. See *Zheng v. Gonzalez*, 409 F.3d 804, 809 (7th Cir. 2005). Importantly, the Board explicitly noted that it was not adopting the IJ's credibility determination. Instead, it assumed for the sake of argument that Chen's wife was forced to undergo an abortion. After noting that Chen no longer qualified as a refugee because of his wife's forced abortion, the BIA examined the record for evidence of other persecution or of resistence by Chen to the family planning program. It found no such evidence. Instead, the BIA focused on the fact that Chen lived in China for five years after the abortion. It dismissed Chen's appeal for lack of evidence.

But the BIA never acknowledged the fact that Chen had no reason to put evidence of other persecution into the record at the time he filed his application, because the law then was clear that he needed only to prove his wife's forced abortion. The same was true at the time of his hearing and his appeal. It is unusual for the Board to confer *automatic* refugee status based on only one fact, but that was the state of the law in this special setting. It is therefore more understandable than it ordinarily would be that Chen saw no reason to fill his application

with additional facts justifying asylum on alternative grounds.

This is the first time that Chen has had the opportunity to respond to the government's critical shift in position. Chen has a statutory right to "a reasonable opportunity to examine the evidence against [him], to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B); see also *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir. 2003) (*per curiam*) ("In the context of political asylum, due process requires, among other things, that an applicant receive 'a meaningful opportunity to be heard.'") (citing *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999)). In our view, because of the way the proceedings unfolded in Chen's case, he has been deprived of that statutory opportunity. See generally *United States v. Johnson*, 457 U.S. 537, 543 (1982) (noting that "the common-law rule, recognized in both civil and criminal litigation, [is] 'that a change in law will be given effect while a case is on direct review,'" quoting *Linkletter v. Walker*, 381 U.S. 618, 627 (1965), which in turn cites *United States v. Schooner Peggy*, 1 Cranch 103 (1801)).

The only question that remains is whether our decision in *Jin* precludes relief for Chen. The petitioner in *Jin*, like Chen, was seeking asylum and withholding of removal based on a forced abortion. In *Jin*, however, his relationship to the woman who suffered the abortion was unclear. At various points in the record Jin described her as "his 'girlfriend,' his 'fiancée' and also his 'wife.'" 572 F.3d at [sl. op. 2]. The IJ denied his petition, finding first

that "Jin was not actually married to Lin." *Id.* at [sl. op. 3]. In addition, the IJ found that "Jin had not shown that underage husbands of pregnant wives suffer persecution because of China's family planning policy." *Id.* The BIA affirmed both those findings. In denying the petition for review, this court found that "there was a fair amount of record evidence that [Jin] and Lin were not actually married." *Id.* at [sl. op. 5]. Only after making those observations did the court go on to recognize the rule in *Matter of J–S–* and to comment that a remand would be futile because Jin presented no evidence that he personally suffered persecution as a result of China's population control policies. But it appears that Jin did not make the procedural point that Chen has made before this panel. Instead, he contented himself with a frontal attack on *Matter of J–S–*, and we rejected that argument on the merits.

There is no cloud at all over the status of Chen's marriage, and thus his case is distinguishable from Jin's on that basis. Furthermore, unlike Jin, Chen has not forfeited the procedural opportunity to attempt to meet the new legal standards for asylum. We conclude that he is entitled to that chance. Because the BIA dismissed Chen's claim based on the lack of evidence that he never knew he was supposed to gather, we GRANT his petition for review and REMAND his case to the Board for further proceedings consistent with this opinion.