Filed:  September 2, 2010

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1584

YI NI,

> Petitioner,

> v.

ERIC H. HOLDER, JR., U.S. Attorney General,

> Respondent.

O R D E R

The Court amends its opinion filed July 13, 2010, as follows:

On page 24, second paragraph, line 11 -- the words "that he was eligible" are deleted.

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

YI NI,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S.
Attorney General,

Respondent.

No. 09-1584

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: May 12, 2010

Decided: July 13, 2010

Before SHEDD, DUNCAN and AGEE, Circuit Judges.

Denied in part and dismissed in part by published opinion.
Judge Duncan wrote the opinion, in which Judge Shedd and
Judge Agee concurred.

## COUNSEL

**ARGUED:** Gang Zhou, New York, New York, for Petitioner.
Daniel Eric Goldman, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Respondent. **ON
BRIEF:** Tony West, Assistant Attorney General, Civil Divi-
sion, Brianne Whelan Cohen, Trial Attorney, Office of Immi-

gration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

DUNCAN, Circuit Judge:

This case arises from a petition for review of the Board of Immigration Appeals' (the "BIA") denial of Petitioner Yi Ni's application for withholding of removal pursuant to section 241(b)(3) of the Immigration and Naturalization Act (the "INA"). We find that the BIA's decision is legally sound and supported by substantial evidence. We further find that Ni has procedurally forfeited his request for a remand to present additional evidence. We therefore deny the petition in part and dismiss it in part.

I.

Ni, a citizen of the People's Republic of China, filed an application for asylum and withholding of removal with the Department of Homeland Security on April 29, 2002.[1] Ni's application asserted that he was eligible for relief because he had a well-founded fear of future persecution in China under that country's "one-child" policy. His claim was based on section 601 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA") (codified at 8 U.S.C. § 1101(a)(42)).[2] According to the BIA's interpretation at the time, section 601 allowed an applicant to establish eligi-

---

[1]Ni also filed an application for protection under Article 3 of the United Nations Convention Against Torture (the "CAT"), which the BIA ultimately denied. However, as Ni conceded at oral argument, he does not challenge that denial and therefore the issue is not before us.

[2]Courts use "section 601" and "8 U.S.C. § 1101(a)(42)" interchangeably to refer to the same statutory provision. This opinion will refer to the provision as "section 601."

bility for asylum and withholding based on past persecution if the applicant could show that his wife had been forced by the government to have an abortion. *See Matter of C-Y-Z-*, 21 I. & N. Dec. 915, 918 (B.I.A. 1997) (en banc); *Matter of S-L-L-*, 24 I. & N. Dec. 1, 4 (B.I.A. 2006) (en banc).

Ni's application alleged that, after marrying Ni Hong Mei in January 1992, he fathered a son with her in 1993. Approximately two months after the birth of the couple's son, Mei was forced to have an intrauterine contraceptive device (an "IUD") inserted pursuant to the population control policies of the Fuzhou municipality, the area where the couple resided. Those policies prohibited rural couples from having more than one child and required them to follow certain contraceptive measures. In May 2000, during a government-required "IUD checkup," Mei was diagnosed as pregnant. Ni asserts that the pregnancy occurred "without [his wife's] knowledge" due to the dislodging of her IUD. J.A. 604. According to Ni, because the pregnancy was the couple's second, the clinic staff subjected Mei to an involuntary abortion in accordance with the local policies.

Ni asserted that following that incident, he and his wife became depressed because they wished to have more children but were "too afraid to conceive out of plan." J.A. 604. According to Ni, he and his wife "would never have the chance to have more children" and he therefore "hated the family planning policy." *Id.* Ni and Mei "decided that [they] should leave China" and, shortly thereafter, Ni "took an opportunity" and left the country. *Id.* Mei remained in China.

On June 21, 2005, Ni appeared for a merits hearing before an Immigration Judge (an "IJ") in Baltimore, Maryland. Upon conclusion of Ni's testimony, the IJ rendered an oral decision denying Ni's application. The IJ concluded that Ni's asylum application was time-barred because he had failed to establish by clear and convincing evidence that he filed the application within one year of his arrival in the United States. The IJ also

denied Ni's withholding of removal application, holding that "there [was] no clear probability that the respondent would be the victim of future persecution in China on account of his political opinion." J.A. 182. Although she did not directly address the basis for her decision, the IJ appeared to rely largely on an adverse credibility finding regarding the alleged forced abortion. She focused on the fact that Mei's medical examination booklet, which Ni submitted in support of his application, did not make any mention of an abortion taking place in 2000.

Ni appealed the decision to the BIA. On June 25, 2007, the BIA issued an opinion affirming the IJ's decision in part and remanding in part. The BIA affirmed the IJ's conclusion that Ni's asylum application was time-barred.[3] However, the BIA remanded the matter "for further analysis of the respondent's claim for withholding of removal," holding as follows:

> The Immigration Judge did not make an explicit finding with regard to the respondent's credibility and provided little analysis of the merits of his claim that his wife was subjected to a forcible abortion of her second pregnancy in May 2000. Rather the Immigration Judge appears to have based her decision to deny relief solely on the fact that the gynecological examination booklet submitted in support of the respondent's claim does not contain any reference to the alleged abortion in May 2000. We consider the Immigration Judge's decision in this case to be insufficient for purposes of appellate review and conclude that remand for further fact-finding and legal analysis is appropriate.

J.A. 149 (citations omitted).

---

[3]Ni does not challenge that determination in this petition.

On remand, the IJ expressly made an adverse credibility finding with regard to Ni's claim that his wife was forced to have an abortion. This finding was based on a "material discrepancy between his oral account of what transpired and documentation which he has submitted in support of his clam." J.A. 65. The IJ again found especially relevant the fact that Mei's medical booklet did not make any reference to an abortion. She further noted that Ni provided no explanation of why such a reference would have been omitted. The IJ also highlighted that Ni had failed to present any corroborative evidence for his claim, in spite of the fact that he had three years in which to do so.

Ni once again appealed the decision to the BIA. On April 29, 2009, the BIA dismissed Ni's appeal. In affirming the IJ's decision, the BIA held:

> Assuming that the Immigration Judge's adverse credibility determination did not undermine [Ni's] application for withholding of removal, her denial of his application for such relief was not in error because his claim is primarily based on his wife's alleged forced abortion.

J.A. 4. The BIA concluded that, as held by the Attorney General in the 2008 decision in *Matter of J-S-*, 24 I. & N. Dec. 520 (A.G. 2008), which overturned prior BIA precedent,[4] under section 601 of the IIRIRA "a claim of persecution based on a forced abortion . . . can only be brought by the individual who has undergone the procedure." J.A. 4. The BIA also found that Ni had not shown any other grounds for eligibility. It noted that Mei's forced insertion of an IUD did not rise to the level of persecution and that, in any event, there was no nexus between Ni's alleged resistance to the one-child

---

[4]As noted above, the BIA had previously held that the spouse of a person who had been physically subjected to a forced abortion or sterilization procedure was entitled to bring a claim under section 601 of the IIRIRA.

policy and the insertion of the IUD. Finally, the BIA also held
that Ni's claim that he would face persecution when he had
more children in the future was too speculative. The BIA
therefore affirmed the IJ's denial of Ni's claims. Ni petitioned
this court for review of the BIA's decision.

## II.

Ni challenges only the BIA's denial of his withholding of
removal claim. He presents three contentions. First, Ni argues
that the BIA erred in relying on *Matter of J-S-* to deny his
claim because that decision concerned persecution in the con-
text of asylum rather than withholding of removal. Second, he
asserts that, even if he was unable under *Matter of J-S-* to
show past persecution based on his wife's forced abortion, his
claim should nonetheless have been granted because he
showed a clear probability of persecution on other grounds.
Finally, Ni argues in the alternative that, because *Matter of J-
S-* changed the legal standard applicable to his case, the mat-
ter should be remanded to the IJ so that he may have an
opportunity to present additional evidence to support his
claim in light of the new legal standard. We address each
argument in turn.

## A.

In addressing Ni's first contention, we must consider
whether his withholding of removal claim is foreclosed by the
holding in *Matter of J-S-* that section 601 of the IIRIRA does
not permit a husband to establish past persecution or fear of
future persecution based on his wife's forced abortion.
Because the Attorney General's holding in *Matter of J-S-*
involves a question of statutory interpretation, we must first
evaluate the validity of that interpretation, *see Chevron
U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837,
842-43 (1984), and then determine whether it governs the
present case.

We begin by exploring the relevant legal background. We then analyze the Attorney General's interpretation of section 601 under *Chevron*. Finally, we determine whether section 601 as interpreted applies to Ni's withholding of removal claim.

1.

Withholding of removal is available under 8 U.S.C. § 1231(b)(3) "only to an alien who can demonstrate a 'clear probability' of persecution on account of his race, religion, nationality, membership in a social group, or political opinion." *Ngarurih v. Ashcroft*, 371 F.3d 182, 189 n.7 (4th Cir. 2004). To establish a clear probability of persecution, the alien must prove that "it is more likely than not that her life or freedom would be threatened in the country of removal." *Gomis v. Holder*, 571 F.3d 353, 359 (4th Cir. 2009).

Ni's claim of persecution is based on his wife's forced abortion pursuant to China's one-child policy. Forced abortion is recognized as grounds for establishing persecution under section 601 of the IIRIRA, which amended the INA to include the following sentence:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.[5]

---

[5]Although section 601 was adopted in the context of asylum, it applies equally to withholding claims. *See, e.g.*, *Lin-Jian v. Gonzales*, 489 F.3d

8 U.S.C. § 1101(a)(42)(B) (footnote call number added). Congress passed section 601 in 1996 "'for the express purpose of overturning the BIA's decision in *Matter of Chang*, 20 I. & N. Dec. 38 (B.I.A. 1989),' which had held that involuntary sterilization pursuant to China's 'one child' policy did not constitute persecution on account of a protected ground." *Dong v. Holder*, 587 F.3d 8, 11 (1st Cir. 2009) (quoting *Lin-Zheng v. Attorney General*, 557 F.3d 147, 151 (3d Cir. 2009) (en banc)).

In 1997, the BIA interpreted the new section 601 to mean that "the spouse of a woman who has been forced to undergo an abortion or sterilization procedure can thereby establish past persecution." *Matter of C-Y-Z-*, 21 I. & N. Dec. 915, 918 (B.I.A. 1997). *See also Matter of S-L-L-*, 24 I. & N. Dec. 1, 8 (B.I.A. 2006) (en banc) (explaining and reinforcing the holding of *Matter of C-Y-Z-*). This interpretation was based largely on the finding that "[t]he impact of forced abortions or sterilizations on a husband and wife's shared right to reproduce and raise children is such that 'the forced sterilization of a wife could be imputed to her husband, whose reproductive opportunities the law considers to be bound up with those of his wife.'" *Matter of S-L-L-*, 24 I. & N. Dec. at 14 (quoting *Chen v. Ashcroft*, 381 F.3d 221, 226 (3d Cir. 2004) (internal quotations omitted)).

We previously adopted this interpretation of section 601 in a case where the government did not contest it. In *Lin-Jian v. Gonzales*, 489 F.3d 182 (4th Cir. 2007), we held that an applicant for withholding of removal could establish past persecution based on his wife's forced abortion pursuant to China's one-child policy:

182, 188 (4th Cir. 2007) (stating that, under the language of section 601 "Lin may establish eligibility for asylum or withholding of removal"); *see also infra* Section II.A.2.b (explaining the applicability of section 601 to withholding of removal).

> The BIA interprets [section 601] to cover the spouse of a person subjected to a forced abortion or sterilization, . . . and the government does not challenge this interpretation. . . . Thus, Lin may establish eligibility for asylum or withholding of removal by demonstrating that his wife was forced to undergo an abortion or that he himself has a well-founded fear of sterilization or other persecution if he returns to China.

*Id.* at 188 (citations omitted). Several other circuits similarly applied the BIA's construction. *See Chen v. Attorney General*, 491 F.3d 100, 105 (3d Cir. 2007); *Cao v. Gonzales*, 442 F.3d 657, 660 (8th Cir. 2006); *Zhang v. Gonzales*, 434 F.3d 993, 1001 (7th Cir. 2006); *He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir. 2003).

In 2007, however, the Second Circuit brought the BIA's interpretation of section 601 into question. In *Lin v. D.O.J.*, 494 F.3d 296 (2d Cir. 2007), the court rejected the BIA's position that the language of section 601 covered the spouses of women forced to abort, concluding "that the BIA erred . . . by failing to acknowledge language in § 601(a), viewed in the context of the statutory scheme governing entitlement to asylum, that is unambiguous and that does not extend automatic refugee status to spouses . . . of individuals § 601(a) expressly protects." *Id.* at 300.

Shortly thereafter, the Third Circuit ordered the Department of Justice to submit additional briefing in its pending case of *Shi v. Attorney General*, No. 06-1952, 2007 U.S. App. LEXIS 17927 (3d Cir. July 27, 2007), in which an applicant sought asylum based on his wife's forced insertion of an IUD. The government was directed to address "whether it adheres to the Board's interpretation of section 601(a) or whether it joins the Second Circuit in rejecting the Board's construction of section 601(a)." *Matter of J-S-*, 24 I. & N. Dec. at 522-23. In response to this request, the Attorney General directed the BIA to refer

to him its decision in *Shi* for review pursuant to 8 C.F.R. § 1003.1(h)(1)(i).

The Attorney General then issued an order in May 2008 overruling the BIA's prior case law and holding "that the spouse of a person who has been physically subjected to a forced abortion or sterilization procedure" is not "per se entitled to refuge status." *Matter of J-S-*, 24 I. & N. Dec. at 520. The Attorney General explained that the text and structure of section 601 clearly indicate that it is only intended to cover the specific individual that was subjected to the forced procedure and not that individual's spouse. The Attorney General also noted that interpreting section 601 to cover spouses created conflicts with several other INA provisions, including those requiring each individual asylum applicant to establish fear of persecution in his or her own right and those setting specific limits and requirements for the derivative relief available to some spouses of successful asylum applicants.

Following *Matter of J-S-*, at least three other circuits have applied the Attorney General's new interpretation of section 601 in published opinions; no circuit appears to have rejected it. *See Yu v. Attorney General*, 568 F.3d 1328, 1332-33 (11th Cir. 2009); *Jin v. Holder*, 572 F.3d 392, 397 (7th Cir. 2009); *Lin-Zheng v. Attorney General*, 557 F.3d 147, 157 (3d Cir. 2009) (en banc).

2.

We turn now to the question of whether to adopt the Attorney General's construction of section 601. Because in making that determination we are reviewing "an agency's construction of the statute which it administers," we must be guided by the application of the familiar *Chevron* framework. *Chevron*, 467 U.S. at 842. Before conducting that analysis, however, we must first determine the extent to which our consideration is affected by our precedent in *Lin-Jian*, which

applied a contrary interpretation to that reached by *Matter of J-S-*.

The Supreme Court has addressed the precise question that confronts us: "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion*." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (emphasis added). We have previously applied *Brand X* in the context of a BIA interpretation that is contrary to our precedent. In *Fernandez v. Keisler*, 502 F.3d 337 (4th Cir. 2007), a petitioner urged us to apply our precedent in *United States v. Morin*, 80 F.3d 124 (4th Cir. 1996), where we held that a person qualifies as a "national of the United States" under 8 U.S.C. § 1101(a)(22) if he can establish that he owes "permanent allegiance to the United States." *Morin*, 80 F.3d at 126. The BIA had subsequently rejected such interpretation of the statute, finding that § 101(a)(22)(B) "does not provide a means for acquiring U.S. national status." *Fernandez*, 502 F.3d at 339.

Relying on *Brand X*, we held that "[a]lthough we agree with Fernandez that he would qualify as a U.S. national under *Morin*, our decision in *Morin* did not purport to set forth the only possible interpretation of the definition of 'national of the United States'" and therefore "we must afford deference to the BIA's contrary, post-*Morin* interpretation of the INA if it is a 'permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843). We explained that, although "*Brand X* in no way calls into doubt our many previous judicial interpretations that rested on the unambiguous words of the statute," where a prior decision of this court applied an interpretation that it "merely *assumed* was correct without saying anything, one way or the other, about whether the statute dictated such an interpretation," that decision "must yield

to a reasonable interpretation" by the relevant agency. *Id.* at 347-48 (emphasis in the original).

Here, *Lin-Jian* did not hold that the interpretation it was applying followed "from the unambiguous terms of the statute." *Brand X*, 545 U.S. at 982. In fact, the opinion made clear that because the BIA's interpretation of section 601 was uncontested at the time, we "merely assumed [it] was correct without saying anything, one way or the other, about whether the statute dictated such an interpretation." *Fernandez*, 502 F.3d at 338. Therefore, pursuant to *Brand X* and *Fernandez*, our precedent in *Lin-Jian* is not controlling here if our *Chevron* review of *Matter of J-S-* reveals that the language of the statute is unambiguous and thus the Attorney General's interpretation of section 601 is correct. Accordingly, as the court did in *Fernandez*, we will guide our analysis by the application of the *Chevron* framework. *See id.* at 348-51.

a.

Pursuant to *Chevron*, we "must first consider whether 'Congress has directly spoken to the precise question' at issue."[6] *United States v. Thompson-Riviere*, 561 F.3d 345, 350 n.2 (4th Cir. 2009) (quoting *Chevron*, 467 U.S. at 842). If we determine that Congress has indeed so spoken, we "must give effect to the unambiguously expressed intent of Congress." *Id.* (quoting *Chevron*, 467 U.S. at 843). If, however, we find that Congress has not directly spoken, we "must determine whether the agency's interpretation of the statute in question is based on a permissible construction of the statute." *Id.*

In seeking to determine whether Congress has directly spo-

---

[6]As explained above, *Lin-Jian* did not have occasion to analyze the meaning of section 601, and we are therefore free to address that question anew. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("[S]ince we have never squarely addressed the issue, and have at most assumed [it] . . . , we are free to address the issue on the merits.").

ken through section 601, we must "begin by examining its plain language" and "give the relevant terms their common and ordinary meaning." *Reid v. Angelone*, 369 F.3d 363, 367 (4th Cir. 2004) (internal quotations omitted). This is because we must "assum[e] that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009) (internal quotations omitted).

Section 601 states in relevant part:

> For purposes of determinations under this Act, *a person* who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and *a person* who has a well founded fear that *he or she* will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42)(B) (emphasis added). The ordinary meaning of the word "person" in section 601 is "[a]n *individual* human being." Webster's Third New Int'l Dictionary 1686 (1986) (emphasis added); *see also* Black's Law Dictionary 1257 (9th ed. 2009) (defining "person" as "[a] human being"). Therefore, in using the word person, and omitting any reference to that person's spouse, it is clear that Congress intended to cover only the individual who has actually been forced to undergo the forced procedure or related persecution, or who has a well-founded fear of such persecution. *See Yu*, 568 F.3d at 1332-33; *Lin-Zheng*, 557 F.3d at 157; *Lin*, 494 F.3d at 305. Had Congress intended to cover couples rather than individuals, it could easily have said so. *See Lin-Zheng*, 557 F.3d at 156 ("Had Congress wished to extend protection

to that person's spouse, it could easily have defined 'refugee' to include the person persecuted as well as his or her spouse."); *see also Gutierrez v. Ada*, 528 U.S. 250, 255-56 (2000) (declining to read a word by inference into a statute that does not contain it and finding that "[t]o argue otherwise is to tag Congress with an extravagant preference for the opaque when the use of a clear adjective or noun would have worked nicely").

Furthermore, as our sister circuits have noted, the fact that the statute makes reference to a person who fears that "*he or she* will be forced to undergo such a procedure" indicates that it intends to refer to only one person rather than a couple, for the individual pronouns "he or she" would not be needed if the word "person" was intended to automatically cover both members of a couple. 8 U.S.C. § 1101(a)(42)(B). *See Yu*, 568 F.3d at 1332; *Lin-Zheng*, 557 F.3d at 156; *Lin*, 494 F.3d at 306; *see also Lane v. United States*, 286 F.3d 723, 731 (4th Cir. 2002) (noting "the basic principle of statutory interpretation instructing courts to avoid a reading which renders some words altogether redundant" (internal quotations omitted)).

For these reasons, we join our sister circuits in holding that in section 601 Congress unambiguously expressed the intent to cover only the specific individual who has undergone forced abortion or sterilization, who has been persecuted for resisting, or who has a well-founded fear of such persecution. Thus, as the Attorney General correctly held in *Matter of J-S-*, section 601 clearly covers only an applicant's personal, not derivative, experience or fear of persecution. *See Yu*, 568 F.3d at 1332 ("In simple terms, persecution, or the fear thereof, must be personally endured by the applicant.").

b.

Even if we found that the terms of the statute were somehow ambiguous, we would still defer to the Attorney General's holding that an applicant who establishes that his spouse

was subjected to a forced abortion is not "entitled to refugee status under section 601" based on that fact alone, *Matter of J- S-*, 24 I. & N. Dec. at 520,[7] but rather must establish a well-founded fear of persecution in his own right, *id.* at 537-38.[8] As the Supreme Court has explained, the Attorney General's decisions regarding eligibility for withholding of removal are especially worthy of *Chevron* deference because "[s]ection 1253(h) [of Title 18] . . . in express terms confers decision-making authority on the Attorney General, making an alien's entitlement to withholding turn on the Attorney General's determination whether the statutory conditions for withholding have been met." *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (internal quotations omitted). The Supreme Court has also highlighted that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *Id.* at 425 (quoting *I.N.S. v. Abudu*, 485 U.S. 94, 110 (1988)). Thus, we must give the Attorney General's determination "controlling weight unless th[e] interpretation[ ] [is] 'arbitrary, capricious, or manifestly contrary to the statute.'" *Fernandez*, 502 F.3d at 344 (quoting *Chevron*, 467 U.S. at 844).

The Attorney General's decision in *Matter of J-S-* is particularly well-deserving of that deference. First, the Attorney General analyzed the text of the statute in a manner consistent

---

[7]In an unpublished opinion issued in March 2010, we relied on *Matter of J-S-* in affirming a denial of withholding of removal. *See Ouyang v. Holder*, No. 09-1160, 2010 U.S. App. LEXIS 6080, at *2 (4th Cir. Mar. 24, 2010). However, we specifically declined to analyze the effect of *Matter of J-S-* on our precedent in *Chen*, finding that *Ouyang* was not the right case in which to address that question.

[8]The Attorney General's holding also mentions that such spouses might be eligible for asylum under the derivative status of section 208(b)(3)(A) of the INA "but only if they accompany, or follow to join, the alien who is eligible for, and is actually granted, asylum." *Matter of J-S-*, 24 I. & N. Dec. at 530 (internal quotations omitted). Because Ni's spouse remains in China, that provision is not applicable here.

with the rules of statutory construction that we applied above. He explained:

> [Section 601(a)] is properly read to refer to the person physically forced to abort the pregnancy (the would-be mother) because the clause refers to "a person forced to abort a pregnancy," and not to "a couple" or "a married couple" forced to do so. Section 601(a)'s subsequent description of an abortion as a "procedure" that "a person" is forced to "undergo" further supports this reading. Because this latter description of a forced abortion can naturally be read only to refer to *one* person—the person upon whom the "procedure" is physically performed—it would be inconsistent with the text and structure of section 601(a) to read the opening clause on abortion to encompass *two* people (the would-be mother and the would-be father).

*Matter of J-S-*, 24 I. & N. Dec. at 529 (emphasis in the original). As discussed previously, we find this reading of the statute's text to be inherently reasonable.

Second, the Attorney General also discussed several other compelling reasons supporting his construction. For example, he noted that permitting a husband to be automatically eligible for asylum based on his wife's persecution would circumvent the INA's specific requirements for derivative asylum. The INA provides that "spouses of persecuted individuals are eligible for derivative asylum if such spouses do not themselves qualify as refugees, but only if they accompany, or follow to join, the alien who is eligible for, and is actually granted, asylum." *Id.* at 530 (internal quotations omitted). By granting applicants automatic refugee status based on their spouses' persecution, the BIA's approach "circumvents with an implied rule the requirements for derivative asylum that the Act expressly sets forth . . . ." *Id.*

The Attorney General further noted that the BIA's construction of section 601 "also departs from, and creates tension with, the Act's general requirement that every applicant for personal asylum (as distinct from statutorily prescribed derivative asylum) must establish *his or her own* eligibility for relief under specific provisions of the statute," and "'effectively absolve[s] large numbers of asylum applicants of the statutory burden to prove' that they themselves have either been persecuted, or have a well-founded fear of being persecuted, on account of their political opinion." *Id.* (quoting *Lin*, 494 F.3d at 308).

The Attorney General's finding that these conflicts between the BIA's construction of section 601 and other provisions of the INA counsel against adopting the BIA's construction is consistent with the well-established principle that we must "give meaning to all statutory provisions and seek an interpretation that permits us to read them with consistency." *United States v. Fisher*, 58 F.3d 96, 99 (4th Cir. 1995).

For these reasons, we conclude that the Attorney General's construction of section 601 in *Matter of J-S-* is reasonable and certainly not "arbitrary, capricious, or manifestly contrary to the statute." *Fernandez*, 502 F.3d at 344 (quoting *Chevron*, 467 U.S. at 844).

3.

Having found that the statute is unambiguous, we turn now to the question of whether the BIA correctly applied it to Ni's withholding of removal claim. Ni asserts that, because "seeking protection from threat to one's life or freedom" through withholding of removal "is a much broader concept than avoiding 'persecution' for the purpose of seeking the relief of asylum," the BIA's "mere reference to . . . *Matter of J-S-* as basis for finding [him] not eligible for withholding of removal is . . . clearly erroneous" because *Matter of J-S-* concerned

persecution in the context of asylum. Petitioner's Br. at 47 (emphasis added). That assertion is unavailing.

First, the Attorney General in *Matter of J-S-* specifically stated that the holding in that decision applied to withholding of removal claims. He explained:

> I conclude that, at least as to political asylum or *withholding of removal claims* predicated on the enforcement of coercive population control programs, the ordinary meaning of the statutory term 'resistance,' coupled with the text of [section 601] of the Act . . . and settled principles of asylum law, does not support the per se rule of spousal eligibility the Board adopted in *C-Y-Z-* and reaffirmed in *S-L-L-*.

*Matter of J-S-*, 24 I. & N. Dec. at 536 (emphasis added). Therefore, *Matter of J-S-* clearly applies to Ni's withholding claim.

Furthermore, contrary to Ni's assertion, it is well settled that withholding of removal covers a narrower, rather than a broader, set of circumstances than asylum. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 424 (1987) (describing those eligible for withholding of removal as "a narrower class of aliens" than those eligible for asylum). As the Third Circuit has explained, an asylum applicant need only establish a well-founded fear of persecution, whereas "[t]he eligibility threshold for withholding of removal is even higher" because "[t]he applicant must . . . demonstrate a 'clear probability' of persecution." *Guo v. Ashcroft*, 386 F.3d 556, 561 n.4 (3d Cir. 2004) (internal citations omitted). Because of the higher standard required for withholding of removal, we follow the general rule that "an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal . . . ." *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004). *See also Yu*, 568 F.3d at 1334 (holding that, because the petitioner "does not

qualify for asylum" under *Matter of J-S-*, "he necessarily fails to satisfy the more stringent standard of proof for withholding of removal").

Accordingly, we hold that Ni cannot establish a claim for withholding of removal based solely on his wife's forced abortion.

## B.

Notwithstanding *Matter of J-S-*, Ni argues that he is entitled to withholding of removal because he has shown past persecution or a clear probability of future persecution based on grounds other than his wife's forced abortion. He asserts that he has established persecution because: (1) he faced depression as a result of the abortion and felt too afraid to conceive out of plan; (2) he plans to have more children and will face persecution in China if he is successful in doing so; and (3) he has established persecution based on his wife's forced insertion of an IUD. The BIA rejected each of these alternative grounds for relief. We review the BIA's findings for substantial evidence and we must affirm unless "evidence presented was so compelling that no reasonable fact finder could fail to find" that the applicant should have prevailed. *Dankam v. Gonzales*, 495 F.3d 113, 119 (4th Cir. 2007) (internal quotations omitted). "In fact, to reverse the BIA's finding we must find that the evidence not only supports that conclusion, but compels it." *Id.* (internal quotations omitted).

## 1.

It is clear under our precedent that Ni's depression does not suffice to support a finding of persecution. We have previously held that "'persecution' cannot be based on a fear of psychological harm alone" and "[t]hus . . . to establish a claim for withholding an applicant cannot rely solely on psychological harm . . . but must also establish injury or a threat of injury to the applicant's person or freedom." *Niang v. Gonzales*, 492

F.3d 505, 511-12 (4th Cir. 2007) (finding no persecution where petitioner's claim for "withholding of removal focuse[d] on the psychological harm she claim[ed] she w[ould] suffer if her daughter accompanie[d] her to Senegal and [was] there subjected to FGM").

Furthermore, Ni's depression claim suffers from the fatal defect that he cannot show a nexus between the alleged harm and his political opinion. *See Saldarriaga v. Gonzales*, 402 F.3d 461, 466 (4th Cir. 2005) ("To satisfy the statutory test, an applicant must make a two-fold showing. He must demonstrate the presence of a protected ground, and he must link the feared persecution, at least in part, to it."). In other words, Ni cannot show that he suffered the emotional persecution "on account of his . . . political opinion" because there is no evidence that the government ever perceived Ni as holding any particular political opinion or that he ever exhibited resistance to the population control policies.[9] *Ngarurih*, 371 F.3d at 189 n.7; *see Lin*, 494 F.3d at 309, 313 (recognizing "that an individual whose spouse undergoes, or is threatened with, a forced abortion or involuntary sterilization may suffer a profound emotional loss as a partner and a potential parent," but explaining that "where the applicant himself has not resisted coercive family control policies, he would need to demonstrate, though [sic] persuasive direct or circumstantial evidence, that his wife's, fiancee's, or girlfriend's resistance has been or will be imputed to *him*"). Therefore, we hold that Ni's depression is not sufficient to support his withholding claim.

2.

Ni's argument that he plans to have more children and will therefore face persecution is both speculative and unsupported

---

[9]Under section 601, a person forced to undergo a forced abortion "shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). However, as explained above section 601 does not apply equally to the spouse of such a person.

by the record.[10] The fear is speculative because it depends on many factors outside of Ni's control, including his wife's willingness to have more children and the couple's physical ability to conceive, which Ni himself has questioned.[11] *See* J.A. 604 (Ni's affidavit stating that as of the year 2000, he and his wife "were both getting quite old for child birth and would never have the chance to have more children if [he] stayed in China"); *see also Huang v. I.N.S.*, 421 F.3d 125, 129 (2d Cir. 2005) (holding that an applicant fails to establish eligibility for relief based on future persecution under China's one child policy where his fear "lacks solid support in the record" and "is merely speculative at best").

In addition, the record directly contradicts Ni's contention

---

[10]The Second Circuit has questioned the validity of characterizing such a claim as speculative without relying on any specific evidence. In *Lin v. Gonzales*, 445 F.3d 127, 132 (2d Cir. 2006), the court overturned an IJ's finding that an asylum claim based on a future pregnancy was speculative, concluding that the IJ "failed . . . to point to any evidence in the record establishing [the] future pregnancy as speculative." *Id.* at 136. However, even assuming that the BIA's lack of discussion about the speculative nature of Ni's claim could constitute error, it is well-settled that we can affirm BIA "factual findings . . . despite error, where that analysis is otherwise supported by substantial evidence and we can state with confidence that the same decision would be made on remand." *Chen v. D.O.J.*, 471 F.3d 315, 339 (2d Cir. 2006). Because the record here contains substantial evidence supporting the BIA's finding, we need not determine whether its lack of discussion of the claim's speculative nature constitutes error.

[11]Several unpublished opinions from other circuits have found that an asylum claim based on a desire to have another child is too speculative to support a claim of asylum. *See Zou-Ye v. Holder*, No. 09-1610, 2010 U.S. App. LEXIS 3133, at *2 (2d Cir. Feb. 18, 2010) ("We likewise uphold the IJ's finding that Zou-Ye's claimed well-founded fear of persecution was too speculative where it was based on Zou-Ye's desire to have a second child in the future."); *Zhen v. Holder*, 312 F. App'x 940, 942 (9th Cir. 2009) ("Zhen and Moy testified that they intend to have more than one child and fear that Zhen would be sterilized or have an IUD forcibly inserted after the birth of one child. . . . The IJ found that Zhen's claim was too speculative to support a grant of asylum. We agree, and therefore deny the petition.").

that he is likely to face persecution. In order to establish a clear probability of persecution based on China's family planning policies, Ni would have to show that he would face persecution for violating or resisting the policies. *See* 8 U.S.C. § 1101(a)(42)(B). He has failed to do so. Although Ni alleges that he "hated the family planning polic[ies]," J.A. 604, there is nothing in the record to indicate that he ever took any affirmative steps to violate or resist them, or that the Chinese government ever perceived him as opposing the policies. Nor is there any indication in the record that, if deported, Ni plans to engage in behavior that will subject him to persecution in the future. In fact, the opposite is true. Ni testified in his deposition that he would not have more children if returned to China because of his unwillingness to break the law. *See* J.A. 116-17 ("If you deport me back to China, it's impossible for me to have any more children . . . [b]ecause the Chinese government will not allow me."). Although his return would potentially put him in the unfortunate circumstance of being legally prohibited from having more children, he cannot establish that it would subject him to persecution "on account of" his violation of or resistance to the family planning policies because the record does not support the conclusion that he will ever violate or resist the policies.

Were the fact that a person is subject to family planning policies sufficient to establish persecution, every Chinese citizen of childbearing age would be eligible for relief. Withholding of removal does not protect against the existence of the family planning policies. It only protects those who face a clear probability of persecution as a result of violating or resisting the policies. *See* 8 U.S.C. § 1231(b)(3). Because the record here does not compel the conclusion that Ni has established a clear probability that he will face such persecution, we must uphold the BIA's finding that Ni is not eligible for withholding of removal on this basis. *See Dankam v. Gonzales*, 495 F.3d 113, 119 (4th Cir. 2007) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) ("[T]o reverse the BIA finding we must find that the evidence not only *sup-*

*ports* that conclusion, but *compels* it . . . .") (emphasis in the original)).

3.

Finally, *Matter of J-S-* squarely forecloses Ni's argument that he can establish persecution based on the fact that Mei was forced to have an IUD inserted. *Matter of J-S-* actually dealt with a case in which the petitioner made an identical argument, namely that he could establish past persecution because his wife had been forced by the Chinese government to have an IUD inserted. In rejecting that argument, the opinion holds that, under section 601, a petitioner cannot establish persecution based on his wife's forced IUD insertion. *See Matter of J-S-*, 24 I. & N. Dec. at 523, 542-43.

Furthermore, although we have previously left open the question of whether "the required insertion and continuous usage of an IUD" might constitute sterilization for purposes of persecution, *Lin v. Mukasey*, 517 F.3d 685, 693 (4th Cir. 2008) (emphasis omitted),[12] under our reading of section 601, the finding of persecution would only apply to the woman subjected to the IUD insertion, not to her husband.

For the reasons stated above, we find that Ni has not presented any evidence "so compelling that no reasonable fact-finder could fail to find" that he has shown past persecution or fear of future persecution in his own right. *Dankam*, 495 F.3d at 119. We therefore hold that the BIA did not err in denying Ni's claim for withholding of removal.

---

[12]After *Lin*, the BIA held that requiring a woman to use an IUD does not amount to persecution absent aggravating circumstances. *In re M-F-W-*, 24 I. & N. Dec. 633, 642 (B.I.A. 2008). We have since adopted that conclusion in an unpublished opinion. *See Chen v. Holder*, 313 F. App'x 625, 629 (4th Cir. 2009).

## C.

Finally, Ni argues that, given that *Matter of J-S-* changed the legal standard applicable to his case after the evidentiary record in his case was closed, we should remand the case so that Ni may present additional evidence in light of the new legal standard.

Ni relies on *Chen v. Holder*, 578 F.3d 515 (7th Cir. 2009), in which the Seventh Circuit remanded a similar case to the BIA. There, Chen had based his asylum claim on his wife's forced abortion. The IJ denied his application due to credibility issues. After the IJ issued its opinion, and after Chen had filed his appeal briefs with the BIA, *Matter of J-S-* was issued, thereby changing the applicable legal standard. As in the case before us, the BIA dismissed the appeal based on the fact that *Matter of J-S-* foreclosed Chen's argument regarding his ground for appeal. The BIA also found that Chen presented no other evidence of persecution. The Seventh Circuit remanded to the BIA for further proceedings to give Chen an opportunity to present additional evidence. The court explained:

> [T]he BIA never acknowledged the fact that Chen had no reason to put evidence of other persecution into the record at the time he filed his application, because the law then was clear that he needed only to prove his wife's forced abortion. The same was true at the time of his hearing and his appeal. . . . This is the first time that Chen has had the opportunity to respond to the government's critical shift in position. Chen has a statutory right to "a reasonable opportunity to examine the evidence against [him], to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government." . . . In our view, because of the way the proceedings unfolded in Chen's case, he has been deprived of that statutory opportunity.

*Id.* at 517 (quoting 8 U.S.C. § 1229a(b)(4)(B)).

Ni's reliance on *Chen* is unwarranted. In contrast with *Chen*, Ni's briefs to the BIA in this case were not filed until July 2008, two months after *Matter of J-S-* changed the applicable law. Thus, this is not the "first time that [Ni] has had the opportunity to respond to the government's critical shift in position." *Id.* Unlike Chen, Ni had ample opportunity to argue to the BIA that, in light of the change in the applicable law, he should be entitled to a remand in order to present additional evidence. By declining to raise such an argument before the BIA, Ni failed to exhaust his administrative remedies with regard to this issue, and we therefore lack jurisdiction to entertain it.[13] *See* 8 U.S.C. § 1252(d)(1); *see also Kporlor v. Holder*, 597 F.3d 222, 226 (4th Cir. 2010) ("It is well established that an alien must raise each argument to the BIA before we have jurisdiction to consider it." (internal quotations omitted)); *Asika v. Ashcroft*, 362 F.3d 264, 267 (4th Cir. 2004) ("We have no jurisdiction to consider this argument, however, because Asika failed to make it before the Board and, therefore, failed to exhaust all administrative remedies." (internal quotations omitted)). Accordingly, we must dismiss this aspect of Ni's petition.[14]

---

[13]We further note that Ni has given us no indication of what new evidence he would present on remand. As the government argues, given that Ni did originally present other evidence to try to establish his own grounds for asylum—including the fact that he was depressed due to the abortion and that he planned to have more children and feared persecution because of it—it is difficult to see how he would benefit from a further opportunity to present evidence.

[14]Our approach here is consistent with that of the First Circuit in the similar case of *Dong v. Holder*, 587 F.3d 8 (1st Cir. 2009). There, a petitioner who had relied largely on his wife's forced abortion as grounds for persecution, requested that the court remand the case in light of *Matter of J-S-* for the BIA to determine whether the record established alternative grounds for persecution. The *Dong* court found that, by failing to raise those alternative grounds before the BIA, the petitioner had failed to exhaust his administrative remedies as to those claims and the claims were therefore forfeited. The court explained that it would not remand for the BIA "to consider an altogether different merits argument that was never urged before it." *Id.* at 13.

### III.

For the reasons explained above, we deny Ni's petition for review of the BIA's decision with regard to the application of *Matter of J-S-* and his eligibility for withholding of removal on other grounds. We also dismiss for lack of jurisdiction Ni's claim that he is entitled to remand in order to present additional evidence.

*PETITION DENIED IN PART AND DISMISSED IN PART*