**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1585**

PAULA VASQUEZ-GALDAMEZ; J.L.P.V.; J.A.P.V.; G.O.P.V.,

      Petitioners,

     v.

WILLIAM P. BARR, Attorney General,

      Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  September 8, 2020           Decided:  October 14, 2020

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:**  Minh Nguyen-Dang, MAYER BROWN, LLP, Washington, D.C., for Petitioners.  Robert Dale Tennyson, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C, for Respondent.  **ON BRIEF:**  Claudia R. Cubas, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C.; Evan M. Tager, MAYER BROWN LLP, Washington, D.C., for Petitioners.  Joseph H. Hunt, Assistant Attorney General, Carl McIntyre, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Paula Vasquez-Galdamez ("Petitioner") petitions this court for review of the denial of her petition for asylum. Petitioner argues that she was denied her due process and statutory rights to a fair hearing when the Board of Immigration Appeals ("BIA") denied her motion to reconsider in light of a fundamental change in law.

As explained below, we decline to reach the question of whether there was a fundamental change in law such that Petitioner was deprived of a fair hearing because Petitioner failed to demonstrate that the outcome of her case would be different on remand in any event. Therefore, the petition for review is denied.

I.

Petitioner came to the United States from Honduras with three of her children in July 2015 after leaving a relationship with her abusive partner, José Adrian Amaya-Alvarez ("Amaya-Alvarez").

Petitioner's relationship with Amaya-Alvarez began in 2006. Within six months, he became verbally abusive toward Petitioner and her children from a prior relationship. Amaya-Alvarez treated his own children preferentially and was physically and verbally abusive to Petitioner on several occasions. After one abusive incident, Petitioner filed a police report against Amaya-Alvarez. As a result, Amaya-Alvarez was arrested and detained for one day before being released. Petitioner and Amaya-Alvarez ultimately married in 2013. Amaya-Alvarez stated that he only married Petitioner so he would be entitled to half the value of the house they lived in, which Petitioner owned. But because

of the escalating physical abuse, Petitioner left Amaya-Alvarez and filed for asylum in the United States in July 2015.

Petitioner relied on *Matter of A-R-C-G-*, 26 I&N Dec. 388, 392 (BIA 2014) to argue that she was eligible for asylum based on the particular social group of "Honduran women who are unable to leave their domestic relationship." A.R. 254.[1] The immigration judge ("IJ") denied Petitioner's application for asylum. The IJ based his denial of Petitioner's asylum claim on a finding that she did not provide evidence to corroborate her claim about the domestic violence she suffered or her attempts to leave Amaya-Alvarez.

The IJ evaluated the rest of Petitioner's claim in the alternative. First, the IJ held that Petitioner's proposed particular social group of "Honduran women who cannot leave their domestic relationship" was not immutable, particular, or socially distinct to establish persecution on a protected ground. *Id.* at 121. The IJ also found that the Honduran police were willing and able to assist Petitioner when she reported the abuse, and that Petitioner did not demonstrate that she was unable to relocate within Honduras.

Petitioner timely filed an appeal to the BIA on July 12, 2017, and the BIA dismissed the appeal on July 25, 2018. The BIA relied on *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), which was decided on June 11, 2018, in holding, "domestic-violence related claims based on conduct by non-governmental actors will not establish a basis for asylum . . . . [Petitioner] has not shown that Honduran society in general perceives, considers, or

---

[1] Citations to the "A.R." refer to the Administrative Record filed by the parties in this appeal.

4

recognizes Honduran women who are unable to leave their relationships." A.R. 39. Thus, the BIA upheld the IJ's finding that Petitioner did not demonstrate that she was persecuted on account of the particular social group "married Honduran women who are unable to leave their domestic relationships." A.R. 39.

On August 24, 2018, Petitioner filed a timely motion for reconsideration and asked the BIA to remand her case to the IJ so that she could present new evidence in light of *Matter of A-B-*. The BIA denied Petitioner's motion to reconsider based on *Matter of A-B-*, stating:

> To the extent that the respondents seek remand in light of *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), we conclude that remand is not warranted. *See Matter of G-D-*, 22 I&N Dec. 1132 (BIA 1999) (emphasizing the importance of administrative finality and finding that the Board will exercise sua sponte authority to reopen a case under new law only when the change in law is fundamental in nature). Moreover, the respondents have not established what additional arguments they would raise in light of *Matter of A-B-* that would impact the outcome of their case.

A.R. 4 (citation omitted).

Petitioner timely appealed to this court for review of the BIA's denial of her motion for reconsideration, claiming that she was denied a fair hearing because she was unable to present new evidence in light of a fundamental change in law.

II.

We review de novo a claim that the BIA denied an alien due process or their statutory rights under the Immigration and Nationality Act, and our review of an agency's

5

factual findings is narrow and deferential. *See Canales-Rivera v. Barr*, 948 F.3d 649, 656 (4th Cir. 2020); *Rusu v. INS*, 296 F.3d 316, 320 (4th Cir. 2002).

## III.

Asylum and removal proceedings are subject to both the Fifth Amendment's guarantee of due process and statutory guarantee of a fair hearing. *See* 8 U.S.C. § 1229a(b)(4)(B) ("[T]he alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government"); *Rusu v. INS*, 296 F.3d 316, 320 (4th Cir. 2002). Petitioner contends that the BIA's application of *Matter of A-B-* to her case and subsequent denial of her motion to reconsider deprived her of her right to a fair hearing. To succeed on a due process claim in an asylum proceeding, Petitioner must establish two elements: (1) a defect in the proceeding rendered it fundamentally unfair; and (2) the defect prejudiced the outcome of the case. *Canales-Rivera v. Barr*, 948 F.3d 649, 656 (4th Cir. 2020).

## A.

Petitioner argues that her asylum proceedings were fundamentally unfair because the BIA failed to remand her case to allow her to respond to and develop an argument pursuant to the decision in *Matter of A-B-*. As Petitioner points out, this court has not conclusively ruled on the fundamental unfairness of the BIA relying on a precedential decision without giving the applicant an opportunity to respond. But, three of our sister circuits have considered this issue.

6

In *Theagene v. Gonzales*, the Ninth Circuit held that the application of a pure change in law to the facts of a case does not offend due process. *See* 411 F.3d 1107, 1113 (9th Cir. 2005) ("Though a tribunal often requests supplemental briefs in such cases, applying new law to a pending case without notice does not, under any authority cited to us, offend due process."). In *Valdiviezo-Galdamez v. Attorney General*, the Third Circuit held that the petitioner was not deprived of due process where the BIA did not notify him of their intention to apply a changed law to his case. *See* 663 F.3d 582, 602 (3d Cir. 2011) ("[W]e know of no authority that would require the BIA to have notified Valdiviezo–Galdamez of the law it intended to apply to his case, and he offers none that would support his claim.").

However, Petitioner seeks to distinguish these cases from *Chen v. Holder*, where the Seventh Circuit held that the petitioner's due process rights had been violated when the BIA issued a decision relying on a change in law by the Attorney General that precluded the petitioner's claim for asylum. *See* 578 F.3d 515, 517–18 (7th Cir. 2009). The Seventh Circuit stated that the Government had a "critical shift in position" because the Attorney General's new decision changed the evidence that was required to prove an asylum claim based on the forced abortion of a person's spouse. *Id.* at 517. Consequently, the court held that the petitioner was deprived of his statutory right to respond to the Government's shift in position because he was not able to put on new evidence in response to the change in law. *See id.* Petitioner argues that her case is analogous to *Chen* and asks this court to conclude that *Matter of A-B-* was a fundamental change in law such that its application without an opportunity to respond denied her a fair hearing.

7

The Government argues that Petitioner's right to a fair hearing was not denied by her inability to respond to *Matter of A-B-* because *Matter of A-B-* did not eliminate asylum for victims of domestic abuse but instead simply forced applicants to "tether [their asylum] claims to the standard, pre-existing analytical framework of *M-E-V-G-*." Gov't's Br. 64; *see also Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014). The Government argues that because the framework of *Matter of M-E-V-G-* existed all along, *Matter of A-B-*'s new interpretation of *Matter of A-R-C-G-* was not a fundamental change in law. Indeed, several circuit courts who have considered the effect of *Matter of A-B-* agree with the Government's position. *See Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1080 (9th Cir. 2020) (holding that *Matter of A-B-* did not create a categorical exception for victims of domestic violence or private criminal activity); *Scarlett v. Barr*, 957 F.3d 316, 333 (2d Cir. 2020) (holding that *Matter of A-B-* did not heighten an applicant's burden to demonstrate that the government was "unable or unwilling" to control a persecutor but merely clarified it); *Gonzales-Veliz v. Barr*, 938 F.3d 219, 232 (5th Cir. 2019) (holding that *Matter of A-B-* did not create a categorical ban on domestic violence claims). *But see Grace v. Barr*, 965 F.3d 883, 900 (D.C. Cir. 2020) (finding that *Matter of A-B-* was arbitrary and capricious because it changed the law without reasoned explanation).

B.

However, we decline to reach the question of whether *Matter of A-B-* was a fundamental change in law so as to render the proceedings fundamentally unfair because Petitioner cannot meet the second element of her due process claim. Even assuming there was a defect in the proceeding that rendered her hearing fundamentally unfair, Petitioner

cannot demonstrate that the outcome of her case was prejudiced by the BIA's failure to remand to the IJ. Prejudice requires that the petitioner's rights "have been transgressed in such a way as is likely to impact the results of the proceedings." *Rusu*, 296 F.3d at 320. That is, Petitioner must prove "but for the errors complained of, there was a reasonable probability that [s]he would not have been deported. This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice [s]he claims to have suffered to the specific due process violation at issue." *United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (internal quotation marks and citations omitted).

Petitioner first contends that this court should presume prejudice, and in the alternative, that she can demonstrate prejudice. Petitioner argues that this court should presume prejudice when the BIA fails to provide an applicant with the opportunity to introduce evidence in light of an intervening change in law on remand because any attempt on her behalf to demonstrate prejudice would be speculative in light of the fact that she has not had the opportunity to correct and develop the proper factual record based on a new particular social group. Of note, Petitioner does not cite to any Fourth Circuit precedent where prejudice is presumed. Instead, she cites only to *Chen* to support the proposition that this court should presume prejudice where an applicant is denied a fair hearing. Petitioner's argument is unavailing here because the IJ made several independent findings that would not be disrupted by a remand to correct an issue of a change in law. Thus, a presumption of prejudice would merely be an end run around these dispositive findings.

As an alternative to a presumption of prejudice, Petitioner suggests that on remand she would rely on a new particular social group -- "unmarried mothers who own property

9

in Honduras." Pet'r's Br. 34. Petitioner claims that with a new social group, she could demonstrate that the Honduran government was unable or unwilling to control Amaya-Alvarez. But the problem with this argument is that the IJ already found that the Honduran government *was* able to control Amaya-Alvarez. It does not follow, then, that the IJ could make a new factual finding that the government and police response to Petitioner's abuse was inadequate if Petitioner alleges that her abuse was on account of her property ownership rather than her marital status, as Petitioner contends. Moreover, this finding is a finding of fact that Petitioner did not challenge in this petition for review. Additionally, the IJ found that Petitioner was able to relocate within Honduras. This is another fact that would not change with a reformulated social group and that was also not challenged in this petition for review.

Consequently, the result of Petitioner's case was not prejudiced by her inability to reconfigure her particular social group based on *Matter of A-B-* because the IJ's alternate findings would still preclude her claim for relief.[2] Therefore, the BIA did not deprive Petitioner of her due process and statutory right to a fair hearing.

IV.

For the foregoing reasons, the petition for review is

*DENIED*.

---

[2] Petitioner also argues that the BIA improperly reconfigured her motion to reconsider as a motion to reopen and thus, abused its discretion in denying it. However, because Petitioner failed to challenge the IJ's alternative, dispositive factual findings and could not demonstrate that the outcome of her case was prejudiced, we do not need to decide this issue.