**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2233**

JEXTE BENJAMIN CEDILLOS-CEDILLOS,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: May 28, 2020                                  Decided: June 26, 2020

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Dismissed in part and denied in part by published opinion. Judge Harris wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

Dree K. Collopy, Sarah B. Pitney, BENACH COLLOPY LLP, Washington, D.C., for Petitioner. Joseph H. Hunt, Assistant Attorney General, Jessica E. Burns, Senior Litigation Counsel, Maarja T. Luhtaru, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

PAMELA HARRIS, Circuit Judge:

Jexte Benjamin Cedillos-Cedillos ("Cedillos"), a native and citizen of El Salvador, seeks review of a final order of removal entered by the Board of Immigration Appeals. Cedillos contends that he fled El Salvador after he was the only witness to his brother's murder, reported the murder to the police, and was threatened by his brother's attackers on several occasions. Based on those events, he applied for asylum and other forms of relief from removal, claiming that he was persecuted and fears future persecution on account of his family ties. An immigration judge and the Board of Immigration Appeals rejected his application, and Cedillos timely sought review in this court. For the reasons that follow, we dismiss in part and deny in part Cedillos's petition for review.

## I.

Cedillos entered the United States without authorization in April of 2013, near Laredo, Texas, and was immediately detained by the Department of Homeland Security. After passing an initial credible fear interview, Cedillos was released of his own recognizance and served with a notice to appear for a removal hearing at a date and time to be determined. He subsequently received follow-up notices listing the date and time for his hearing, and attended that hearing, represented by counsel. Cedillos conceded removability as charged as an alien present in the United States without having been admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i), but applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Cedillos based his petition for relief on alleged persecution "on account of" his "membership in a

2

particular social group" composed of his nuclear family. *See* 8 U.S.C. § 1101(a)(42)(A). We begin by summarizing Cedillos's testimony before the immigration judge ("IJ") and then outline the legal proceedings that followed.

**A.**

The following facts are taken from Cedillos's testimony, which the IJ deemed credible, and his application for relief from removal. On November 17, 2012, Cedillos was walking home from work when he saw two men, whom he recognized as neighbors and friends of his brother, beating a person he could not immediately identify. After the men – one of whom Cedillos believed to be a gang member – saw Cedillos and recognized him, they yelled "'hoy,' as a greeting," stopped beating the victim, and left. When Cedillos approached the victim, he realized it was his brother, Ruben, whose injuries turned out to be fatal. Cedillos and his father immediately reported the attack to the police, but the police were not able to locate the attackers. At some point, the police went to the attackers' homes but found that the men no longer lived there.

Cedillos did not see or hear from the attackers for approximately a month and a half. Then, on January 1, 2013, Cedillos was leaving his job at a local restaurant when he saw the attackers waiting in a car outside. He ran to the nearby home of a friend, Nurian Ramirez, to avoid the attackers, who chased after him but stayed outside. The next morning, Ramirez received a telephone call from the attackers asking to speak to Cedillos, but Cedillos did not take the call. The attackers returned to Ramirez's home on January 10, 2013, and again asked for Cedillos; Ramirez told the men that she did not know who

3

they were talking about. Cedillos had no further contact with the attackers before he fled to the United States in March of 2013, during which time he "almost never" left the house. A.R. 116.

None of Cedillos's family, all of whom remain in El Salvador, have been threatened or harmed, nor have the two men who killed Cedillos's brother tried to contact his family or ask for his whereabouts.

**B.**

The IJ denied Cedillos's petition for relief from removal on all counts. Most relevant to this appeal is Cedillos's application for asylum, which, the IJ held, suffered from a number of flaws. First, the IJ found that Cedillos failed to establish either that he "suffered past persecution or that he independently has a well-founded fear of future persecution." A.R. 53. Though the IJ recognized this circuit's determination, in *Crespin-Valladares v. Holder*, 632 F.3d 117, 126 (4th Cir. 2011), that credible death threats can amount to persecution, he found that what Cedillos described here – the two attackers looking for him, without any claim that they physically harmed him or that they communicated any specific threat to do so – did not meet that threshold. Nor had Cedillos shown a reasonable possibility of future persecution in El Salvador, the IJ held, given his testimony that his immediate family – eight surviving siblings and both his parents – remained there and had not been harmed, or even contacted, by the attackers. And, the IJ noted, Cedillos also could not establish a well-founded fear of future persecution because he could avoid persecution by relocating to another part of El Salvador. *See* 8 C.F.R. 1208.13(b)(2)(ii).

4

The IJ then held that Cedillos's asylum application failed for a second, independent, reason: because "even if [Cedillos] could establish that he was persecuted in the past and has a well-founded fear of future persecution, he has not established that any such persecution would be *on account of a protected ground*." A.R. 55 (emphasis added). Among the protected grounds listed in the asylum statute is "membership in a particular social group." 8 U.S.C. § 1158(b)(1)(B)(i). Cedillos claims that he is a member of a particular social group made up of his immediate family, and the IJ acknowledged that a family can constitute a particular social group. However, the IJ went on to hold, Cedillos had not met what is often called the nexus requirement of the asylum statute: That is, he had not made a showing that "his family membership is at least one central reason for the harm that he suffered and fears." A.R. 55. Instead, the IJ found, the record indicated that "the overwhelming motivation" for any potential harm was that Cedillos "witnessed the murder," independent of the fact that he was related to the victim. *Id.*

For much the same reasons, the IJ held that Cedillos was not entitled to withholding of removal.[1] Finally, the IJ held that Cedillos failed to establish that it is more likely than not that he would be tortured if removed to El Salvador, and thus that he did not qualify for CAT protection.

---

[1] Both asylum and withholding of removal are based on an applicant's showing of persecution on account of a statutorily protected status. *See* 8 U.S.C. § 1101(a)(42)(A) (asylum); *id.* § 1231(b)(3)(A) (withholding). However, the standard of proof for withholding is higher, requiring the applicant to establish a "clear probability" of persecution, rather than the less stringent "well-founded fear" of persecution sufficient to make out an asylum claim. *See Marynenka v. Holder*, 592 F.3d 594, 600 (4th Cir. 2010). Thus, an applicant who is ineligible for asylum necessarily is ineligible for withholding of removal. *See Tang v. Lynch*, 840 F.3d 176, 183 (4th Cir. 2016).

Cedillos appealed to the Board of Immigration Appeals ("BIA"). As a threshold matter, Cedillos cited the Supreme Court's opinion in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) – which had issued after the IJ's decision – to argue that because the first notice to appear ("NTA") he received had not specified the time and place for his removal hearing, the IJ lacked jurisdiction over his removal proceedings altogether. He also argued that the IJ erred on the merits in denying his claims for relief.

A one-member panel of the BIA dismissed Cedillos's appeal and affirmed the IJ's findings. The BIA rejected Cedillos's *Pereira* argument, explaining that an NTA lacking the time and place of an initial removal hearing nonetheless "vests an [IJ] with jurisdiction over the proceedings . . . as long as a Notice of Hearing specifying this information is later sent to the alien." A.R. 5. Here, because Cedillos indisputably received later notices that included this information, there was no jurisdictional defect.

The BIA also affirmed the IJ's denial of asylum, agreeing that "the incidents of harm described by [Cedillos] did not rise to the level of past persecution," and echoing the IJ's determination that the record lacked evidence sufficient to establish an objectively reasonable fear of future harm. A.R. 4. In addition, the BIA agreed that Cedillos had failed to establish the requisite nexus between the threatened harm and membership in his family. Like the IJ, the BIA recognized that it is "well settled that membership in a nuclear family qualifies as a protected ground for asylum purposes." *Id.* But like the IJ, the BIA also concluded that the record indicates that the attackers' motivation was not Cedillos's family membership, but rather "their desire to retaliate against [him] for having reported to the police the crime they committed." *Id.*

6

Finally, the BIA found no reason to disturb the IJ's determinations that Cedillos could avoid persecution by relocating to another part of El Salvador and that he had failed to establish grounds for withholding of removal or CAT protection.

Cedillos timely petitioned this court for review.

## II.

On appeal, Cedillos argues that the BIA and IJ improperly denied his claim for asylum.[2]  He identifies several purported errors, including the failure to dismiss proceedings for lack of jurisdiction following *Pereira*, and the determination that Cedillos had not shown past persecution or a well-founded fear of future persecution on account of his family ties.[3]

Where, as here, the BIA "adopts the IJ's opinion and supplements it with its own reasoning," we consider both rulings on appeal. *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015).  We review de novo the legal question of whether the IJ lacked

---

[2]  Because Cedillos does not meaningfully address his claims for withholding or CAT, we conclude that he has abandoned those claims on appeal. *See* Fed. R. App. P. 28(a)(8)(A); *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013) (noting that it is "a well settled rule that contentions not raised in the argument section of the opening brief are abandoned" (citations and emphasis omitted)).

[3]  Cedillos also argues, for the first time on appeal, that the IJ erred when it did not consider additional potential "particular social groups" other than Cedillos's nuclear family.  But because Cedillos failed to raise this argument before the BIA, we have no authority to consider it, and therefore dismiss the petition for review insofar as this claim is concerned. *See* 8 U.S.C. § 1252(d)(1) (stating that court may review removal order only if alien exhausted all administrative remedies); *Kporlor v. Holder*, 597 F.3d 222, 226 (4th Cir. 2010) ("[I]t is well established that an alien must raise each argument to the BIA before we have jurisdiction to consider it." (internal quotation marks omitted)).

jurisdiction over Cedillos's removal proceedings, and we review factual findings – including the determination that the harm alleged was not on account of Cedillos's family ties – for substantial evidence, treating them as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Ultimately, we must affirm the BIA's decision if it is not "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

## A.

We first address Cedillos's jurisdictional argument, though we need not say much. That is because this claim – that because his initial NTA did not include a time or date for a hearing, the immigration court lacked jurisdiction over his removal proceeding – is squarely foreclosed by our recent opinion in *United States v. Cortez*, 930 F.3d 350, 355 (4th Cir. 2019), which was issued only after the parties' briefing in this case.

A bit of context: The regulations governing removal proceedings provide that such proceedings commence and "[j]urisdiction vests" with the IJ "when a charging document is filed with the [i]mmigration [c]ourt." 8 C.F.R. § 1003.14(a). One such qualifying document is a "[n]otice to [a]ppear," *id.* § 1003.13, which – as described by the regulations – need not include a date and time for a hearing, *id.* § 1003.15(b)–(c), though that information is required to be provided to a noncitizen later, by the immigration court itself, *id.* § 1003.18(b). The Immigration and Nationality Act also refers to a "notice to appear," and defines that document to include "[t]he time and place at which [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i); *see also Pereira*, 138 S. Ct. at 2114 (confirming that notice to appear under § 1229(a) "include[s] . . . the time and place of the

8

removal proceedings"). Relying on this statutory provision, Cedillos contends that because the initial notice in his case omitted the date and time of his hearing, the immigration court never had "jurisdiction," rendering his removal proceeding altogether null and void.

We rejected this precise claim in *Cortez*, holding that the purported defect here is not jurisdictional, because the regulation upon which this argument relies – 8 C.F.R. § 1003.14(a) – is not "jurisdictional in the formal sense," 930 F.3d at 359, but instead is "more like a docketing rule, providing for the orderly administration of proceedings . . . before the immigration judges," *id.* at 362 (internal quotation marks omitted). And second, we explained that there is in any event no defect in such circumstances, because "[i]t is the regulatory definition of 'notice to appear,' and not § 1229(a)'s definition, that controls in determining when a case is properly docketed with the immigration court," and that regulatory definition does not require inclusion of the time and date of proceedings. *Id.* at 363. Thus, Cedillos's threshold claim fails.

**B.**

We turn next to the crux of this appeal: whether substantial evidence supports the determination of the IJ and BIA that Cedillos has not met his burden of showing eligibility for asylum. To establish such eligibility, an applicant must show that he has suffered past persecution or has a well-founded fear of future persecution, and must meet the nexus requirement by showing that such persecution was or will be "on account of" his "membership in a particular social group." 8 C.F.R. § 1208.13(b)(1); *see also* 8 U.S.C. § 1101(a)(42)(A). Both prongs are necessary to make out a cognizable claim for asylum, and the IJ and BIA determined that Cedillos satisfied neither here. Because the nexus issue

9

is dispositive of this petition, we need not address the agency's determination that the harm alleged falls short of persecution. Instead, we begin, and end, our analysis by considering whether Cedillos satisfied the nexus requirement.

It is important to note that our role in this context – reviewing the finding that Cedillos failed to fulfill the nexus requirement – is limited, as we have repeatedly emphasized: "Because this is a factual finding, our task is not to decide how we would rule in the first instance. Rather, we must uphold the BIA's finding unless no rational factfinder could reach the same conclusion." *Temu v. Holder*, 740 F.3d 887, 891 (4th Cir. 2014). Put differently, "our review of the BIA's and IJ's determination of this factual question is limited to considering whether their conclusion is 'supported by reasonable, substantial, and probative evidence.'" *Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017) (quoting *Ngarurih v. Ashcroft*, 371 F.3d 182, 188 (4th Cir. 2004)). We conclude that it is.

The BIA and IJ properly determined, and the government does not dispute, that Cedillos is a member of a cognizable particular social group – his immediate family. Indeed, we have held that a nuclear family "provides a prototypical example of a particular social group." *Crespin-Valladares*, 632 F.3d at 125 (internal quotation marks omitted). The only question is whether Cedillos has shown the requisite nexus between his family ties and the alleged persecution, or whether, as the government argues, substantial evidence supports the agency's finding that the attackers' overwhelming motivation was that Cedillos had witnessed the murder and reported it to the police.

"Persecution occurs 'on account of' a protected ground if that ground serves as 'at least one central reason for' the feared persecution." *Id.* at 127 (quoting 8 U.S.C.

10

§ 1158(b)(1)(B)(i)).  A central reason is not necessarily "*the* central reason or even a dominant central reason," but it must be more than "incidental, tangential, superficial, or subordinate" to another reason for harm.  *Id.* (internal quotation marks omitted).  As the Supreme Court has explained, the applicant "must provide *some* evidence of [motive], direct or circumstantial."  *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

Here, the record provides ample support for the IJ and BIA's conclusion that the attackers' motivation was their desire to prevent Cedillos – the only witness – from reporting the murder of his brother, or to retaliate against him for having done so.  Cedillos testified, credibly, that he witnessed the attackers' murder of his brother, that the attackers recognized him, that he reported this crime to the police, and that the attackers subsequently tried to speak to him at his place of work and a friend's house.  But it does not inevitably follow that the attackers' motivation was his relationship to his brother, and Cedillos points to nothing in the record that would support such a conclusion.  Instead, the events as recounted by Cedillos indicate that the attackers approached him because he was the sole witness to a crime they committed, in an attempt to prevent him from, or retaliate against him for, reporting them to the police.

Cedillos's testimony and the documentary evidence he provided support this determination.  When asked why he was afraid to return to El Salvador, Cedillos testified before the IJ that it was "[b]ecause [he is] the only witness who recognized them."  A.R. 101.  This rationale is consistent with Cedillos's application for relief from removal, which states that the attackers "threatened [him] because [he] was the only witness."  A.R. 302.  Similarly, the letters submitted in support of Cedillos's asylum application repeat the

11

notion that he feared for his life as the only witness. *See, e.g.*, A.R. 320 ("[Cedillos] was persecuted . . . after having been the only witness of the death of his brother . . . ."); A.R. 322 (Cedillos's "life was in danger since he was the only . . . witness of his older brother's murder"); A.R. 324 ("[F]or being the only witness [Cedillos] was threatened by the perpetrators . . . ."); A.R. 333 (Cedillos was threatened "for being the only . . . witness of the murder of his older brother").

It is true, as we have explained, that "more than one central reason may, and often does, motivate a persecutor's actions," *Cruz v. Sessions*, 853 F.3d 122, 128 (4th Cir. 2017), and evidence that Cedillos's attackers were motivated by his status as a witness does not by itself foreclose the possibility that they also might have been motivated by his membership in his nuclear family, *see id.* at 129–30. On multiple occasions, we have recognized the existence of "mixed motive" cases, "in which a statutorily protected ground comprises only part of the persecution." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009). And in several of our recent mixed motive cases, we have cautioned the BIA against taking an "excessively narrow" approach to the nexus requirement, *Hernandez-Avalos*, 784 F.3d at 949, especially in the context of family ties. But those cases are distinguishable, and here the agency was not "compelled" to conclude, *id.* at 948, on this factual record, that mixed motives were at play.

In *Hernandez-Avalos v. Lynch*, 784 F.3d 944 (4th Cir. 2015), for example, we considered a case in which gang members threatened to kill a woman if she would not allow her son to join their ranks. *See id.* at 947. The BIA determined that the gang was motivated by recruitment, rather than the mother's family relationship to her son, so that

12

Hernandez was not eligible for asylum. *Id.* at 949. But we disagreed, explaining that the "recruitment motiv[e] . . . did not preclude the existence of another central reason – family ties – for that same persecution," and that the record compelled a finding that it was the mother's relationship to her son that explained why she, and not some other person, was targeted for threats. *Id.* at 950.

At the same time, however, we noted that even a threat that specifically references a family member is not necessarily made "on account of" the familial relationship. *Id.* at 950 n.7. Gang members had issued a second threat against Hernandez, vowing to kill her if she reported them to authorities for murdering her husband's cousin. It "may well be" the case, we explained, that *this* threat "was not made on account of Hernandez's familial connections," because "[t]hat same threat could have been directed at any person who knew about the gang members' criminal activities." *Id.* The same reasoning governs here, where substantial evidence indicates that the threats made to Cedillos could have been directed at any person who witnessed his brother's killing. Unlike the threats against Hernandez concerning her son's recruitment, for which "there [was] no evidence that she would have been selected as the recipient . . . absent th[e] familial connection," *id.*, the threats alleged by Cedillos are entirely consistent with a motivation independent of his family ties.

For much the same reason, the nexus determinations of the IJ and BIA in this case comport with our decision in *Cruz v. Sessions*, 853 F.3d 122 (4th Cir. 2017). In *Cruz*, the petitioner's husband disappeared, and she suspected he was killed by his employer – who, when asked about the disappearance, threatened that she would "suffer the same fate" if she filed a police report. 853 F.3d at 125. We rejected the BIA's determination that Cruz

was not persecuted because of her relationship to her husband, but rather to deter her from reporting her husband's murderer to the police. *See id.* at 128–29. This, we held, disregarded record evidence that the employer was motivated by his belief that "because of [Cruz's] relationship with her husband, she was more likely than others to search for him and to contact the police." *Id.* at 130. The record "unequivocally demonstrate[d]," we explained, that Cruz was in a position to suspect and report her husband's employer only because of information she learned through her husband, as a result of her spousal relationship with him. *Id.* In addition, the employer specifically told Cruz not to report her husband's disappearance; threats were made both to Cruz and to her children over a period of two years; and those threats – repeated phone calls to Cruz, and the killing of the family's dogs – occurred in Cruz's home, "the center of life for [her deceased husband] and his nuclear family." *Id.* at 129.

The record before us now is very different, and it cannot be said to compel the conclusion that Cedillos was targeted – in whole or in part – because the men who attacked his brother were concerned with his membership in his nuclear family. On Cedillos's own telling, the attackers never mentioned his brother to him; they did not go to his family's home, despite the fact that they were neighbors and presumably knew where the Cedillos family lived; and they have never contacted any other member of his family – including his father, who along with Cedillos reported the crime to the police. And Cedillos, unlike Cruz, knew the attackers' identity not because of information he learned through his familial relationship with his brother, but only because he happened upon the assault. On this record, we think there is ample evidence to support the agency's determination that

14

family membership was not an "intertwined" reason for the threats against Cedillos. *Cf. Cruz*, 853 F.3d at 129 (finding that agency erred in "failing to consider the intertwined reasons for" the threats against Cruz).

In sum, and consistent with our case law, the record in this case does not compel the conclusion that family membership was "at least one central reason," 8 U.S.C. § 1158(b)(1)(B)(i), why Cedillos was threatened by his brother's attackers. Accordingly, we affirm the agency's determination that Cedillos cannot satisfy the nexus requirement, and so is not eligible for asylum.

## III.

For the foregoing reasons, we dismiss in part and deny in part Cedillos's petition for review.

*DISMISSED IN PART AND DENIED IN PART[*]*

---

[*] This opinion is published without oral argument pursuant to this Court's Standing Order 20-01, http://www.ca4.uscourts.gov/docs/pdfs/amendedstandingorder20-01.pdf (amended Apr. 7, 2020).

15