**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 25-1219

_____

ANA RAFAELA MARQUEZ-CRUZ; M.P.G.M.,

Petitioners,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Submitted:  December 3, 2025                    Decided:  January 8, 2026

_____

Before WYNN and HEYTENS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Petition for review denied by unpublished per curiam opinion.

_____

**ON BRIEF:** Ronald D. Richey, LAW OFFICE OF RONALD D. RICHEY, Germantown, Maryland, for Petitioners.  Brett A. Shumate, Assistant Attorney General, Erica B. Miles, Assistant Director, Rachel P. Berman-Vaporis, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ana Rafaela Marquez-Cruz, on behalf of herself and her minor daughter M.P.G.M., petitions for review of an order of the Board of Immigration Appeals dismissing the appeal from the immigration judge's denial of her application seeking asylum, statutory withholding of removal, and protection under the Convention Against Torture ("CAT").[1] Finding no reversible error, we deny the petition for review.

I.

Marquez-Cruz and her daughter are natives and citizens of El Salvador. In 2003, when Marquez-Cruz was approximately 12 years old, MS-13 gang member Jose Vioso Zetino ("Zetino"), found her attractive and wanted her to be his girlfriend. He began to follow and harass her in public. Marquez-Cruz was not interested and would resist Zetino, but he would often grab, hug, and kiss her against her will. Sometimes he would let her go. Other times her mother or others would intervene, and he would release her. By 2006, Marquez-Cruz had obtained a restraining order against Zetino.

In September 2006, Zetino told Marquez-Cruz that he was going to send her a gift for her 15th birthday. Two days later, two MS-13 gang members raped Marquez-Cruz in her home. Marquez-Cruz reported the rape to the police and told them she suspected Zetino sent the men to rape her. The police took her statement and sent her for a forensic test, but there was insufficient evidence to arrest Zetino. The two rapists were later arrested on

---

[1] Marquez-Cruz's minor daughter seeks asylum as a derivative beneficiary of the lead petitioner. *See* 8 U.S.C. § 1158(b)(3).

2

other charges but escaped police custody.  After the rape, Marquez-Cruz temporarily moved to a cousin's house but returned when gang members threatened her mother.  In November 2006, Marquez-Cruz's rapists assaulted her grandfather, although it is not clear what the motivation was for this assault.

At some point, Zetino married another woman and Marquez-Cruz began a long-term relationship with her boyfriend.  But Zetino's harassment continued.  Zetino's wife would also insult Marquez-Cruz in public—even though Marquez-Cruz told her that she did not want anything to do with Zetino and that he was the one who was obsessed with her.  In March 2010, Marquez-Cruz obtained a restraining order against Zetino's wife.

Two years later, Marquez-Cruz gave birth to her daughter, and the harassment stopped.  But when the police began searching for Zetino in 2013 due to his MS-13 gang activities, Zetino threatened her.  He told her that she was still not safe and threatened to harm her daughter.  Marquez-Cruz reported the threat to the police, and they told her they were already looking for Zetino.  Despite Zetino's persistence, Marquez-Cruz testified that she was never his girlfriend and was never in any kind of a relationship with him.  Marquez-Cruz's cousin testified that Marquez-Cruz "never had anything to do with [Zetino]."  J.A. 181.  She testified that Zetino threatened Marquez-Cruz "[b]ecause he wanted to be with her" and for her "to move out with him, [but] she didn't want to be with him."  *Id*.

In 2014, two individuals banged on Marquez-Cruz's door.  She suspected that it was MS-13 gang members (or perhaps Zetino) and reported the incident to the police.  But she did not see the individuals and could not identify them.  After this incident, Marquez-Cruz decided to leave El Salvador for the United States.  She testified that she does not know

3

where Zetino is now, but she believes his wife still lives in the same town as her mother and aunt. Although Marquez-Cruz has remained in contact with her relatives, they have not said anything to her about Zetino, and she has not asked about him. She testified that she fears Zetino, his wife, or the MS-13 gang will harm her if she returns to El Salvador, and that the police will not protect her.

Marquez-Cruz and her daughter entered the United States illegally on or about May 25, 2014, and were intercepted by immigration officials.[2] The Department of Homeland Security initiated removal proceedings by serving Notices to Appear, charging them as removable for being present in the United States without having been admitted or paroled. Marquez-Cruz admitted the allegations and conceded the charge of removability, but sought asylum, withholding of removal, and protection under the CAT. The Immigration Judge (IJ) denied relief. The Board of Immigration Appeals (Board) upheld the decision of the IJ and dismissed Marquez-Cruz's appeal. Marquez-Cruz now petitions this court for review of the Board's decision.

## II.

To prevail on a claim for asylum, the applicant must establish three elements:

> (1) that the applicant has suffered past persecution or has a well-founded fear of future persecution; (2) that the persecution is on account of [her] race, religion, nationality, membership in a particular social group ["PSG"], or political opinion; and (3) that the persecution is perpetrated by an

---

[2] Marquez-Cruz's boyfriend illegally entered the United States approximately two months after him, where they reunited. However, he did not testify because he is also subject to a removal order.

organization that [her] home country's government is unable or unwilling to control."

*Portillo Flores v. Garland*, 3 F.4th 615, 626 (4th Cir. 2021) (cleaned up).  An applicant who "claims asylum based on membership in a PSG must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Guardado v. Bondi*, 147 F.4th 432, 437 (4th Cir. 2025) (cleaned up).

"Persecution occurs on account of a protected ground if that ground serves as at least one central reason for the feared persecution." *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 824 (4th Cir. 2020); *see* 8 U.S.C. § 1158(b)(1)(B)(i)). "A central reason is not necessarily *the* central reason or even a dominant central reason, but it must be more than incidental, tangential, superficial, or subordinate to another reason for harm." *Cedillos-Cedillos*, 962 F.3d at 824 (cleaned up).

"[W]ithholding of removal covers a narrower . . . set of circumstances than asylum," and requires "the applicant [to] demonstrate a clear probability of persecution." *Yi Ni v. Holder*, 613 F.3d 415, 427 (4th Cir. 2010) (cleaned up).  Because of the higher evidentiary threshold, "an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal." *Id.* (cleaned up).

Marquez-Cruz sought asylum based on her claim that she suffered past persecution, and has a well-founded fear of future persecution, based on an imputed "anti-gang" political opinion.  She also sought asylum based on her membership in three proffered PSGs— (1) members of the El Salvadoran Marquez family; (2) involuntary girlfriends of

5

MS-13 gang leader Zetino; and (3) El Salvadoran women unable to leave a relationship. The IJ assumed that the harm Marquez-Cruz suffered in the form of Zetino's threats and her rape by the other two MS-13 gang members could be considered persecution but found that Marquez-Cruz had failed to show that the asserted past persecution or the feared future persecution was on account of the claimed protected grounds. The Board agreed.

We review the Board's legal conclusions de novo. *See Ibarra Chevez v. Garland*, 31 F.4th 279, 288 (4th Cir. 2022). "We review factual findings for substantial evidence, treating them as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id*. at 288-89 (cleaned up). Where, as here, the Board issues "its own detailed opinion affirming the IJ with further reasoning of its own but without expressly adopting the IJ's opinion," "we focus our review on the [Board's] decision." *Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020). "We will uphold the [Board's] decision unless it is manifestly contrary to law and an abuse of discretion." *Portillo Flores*, 3 F.4th at 626 (cleaned up).

### A.

We begin with Marquez-Cruz's challenge to the agency's rejection of her claim that she was persecuted on account of an imputed "anti-gang" political opinion. This claim is grounded in her assertion that her rejection of Zetino's advances was considered by Zetino and the gang to be based on an "anti-gang" political opinion.

The IJ found that the past harm Marquez-Cruz suffered was not on account of a political opinion, actual or implied. There was no evidence that Marquez-Cruz intended her rejection of Zetino to be an anti-gang opinion and no indication that Zetino or the MS-

6

13 gang interpreted her rejection of Zetino as being due to an anti-gang opinion instead of simply her rejection of Zetino's attempts to have a relationship with her. The Board found no clear error in the IJ's findings, observing that there was no evidence that Marquez-Cruz "was politically active in El Salvador on the issue of MS-13 or gangs, or that she ever expressed an anti-gang opinion beyond rejecting one MS-13 gang leader." J.A. 5. "Nor [did] the evidence establish that MS-13 members viewed this rejection as politically based." *Id*.

We have reviewed the administrative record and considered the arguments raised in conjunction with the record and the relevant authorities. We conclude that the record evidence does not compel a ruling contrary to any of the agency's factual findings, and that substantial evidence supports the dispositive ruling.

B.

We turn, therefore, to Marquez-Cruz's requests for asylum based upon her proposed PSGs, and we likewise find no error in the agency's determination.

Regarding Marquez-Cruz's reliance upon her membership in the El Salvadoran Marquez family, the IJ determined that, even if her family was a cognizable social group, she had failed to prove that the harm she suffered was on account of her family membership. Although Marquez-Cruz offered testimony that some of her family members were also mistreated by MS-13 gang members, and that this may have been due to *their* relationship to *her*, the Board held that the IJ did not clearly err in finding that Zetino's motivation was still rooted in his desire that she agree to be his girlfriend, and not on account of her being a member of the Marquez family. We have reviewed the record and

7

the arguments and hold that the record does not compel the conclusion that "at least one central reason" for Marquez-Cruz's persecution was membership in her family.  8 U.S.C. § 1158(b)(1)(B)(i).  Substantial evidence supports the finding of no nexus between Marquez-Cruz's past persecution or fear of future persecution and her membership in her family-based particular social group.

Marquez-Cruz also challenges the agency's conclusion that her remaining proposed PSGs— "involuntary girlfriends of Zetino" and "El Salvadoran women unable to leave a relationship"—cannot serve as a basis for asylum or withholding of removal.  We review the agency's cognizability rulings de novo.  *See Morales v. Garland*, 51 F.4th 553, 557 (4th Cir. 2022).  And we find no error in the agency's determination.

Regarding the proposed group of Zetino's "involuntary girlfriends," Marquez-Cruz failed to establish that there are any other members of this proposed "group" and, for that matter, that she was Zetino's involuntary girlfriend.  Marquez-Cruz refused Zetino's efforts in this regard—for over a decade—before she left El Salvador and both she and her cousin denied that Marquez-Cruz was ever in any relationship with Zetino.  We also agree with the Board's determination that being an "involuntary girlfriend" is not an immutable characteristic and that Marquez-Cruz failed to establish through society-specific evidence that members of this group are understood to be socially distinct within the El Salvadoran society.

For similar reasons, we agree with the Board's determination that Marquez-Cruz failed to demonstrate that she was entitled to asylum based upon her membership in the proposed group of "El Salvadoran women unable to leave a relationship."  Again,

8

Marquez-Cruz did not prove that she is a member of this proposed group as she was never in a relationship with Zetino. And, in any event, the Board did not err in concluding that Marquez-Cruz had failed to define the group with the requisite particularity, given the wide-ranging, amorphous, and subjective nature of the term "relationship," nor did she show that the proposed group is considered socially distinct within the El Salvadoran society.[3]

C.

For the forgoing reasons, we find no error in the agency's denial of Marquez-Cruz's request for asylum. And because her application for asylum fails, her withholding of removal application necessarily fails as well. *See Yi Ni*, 613 F.3d at 427.

III.

This leaves us with Marquez-Cruz's final claim for relief under the CAT. To succeed on this claim, it was incumbent upon Marquez-Cruz to "show that it is more likely than not that . . . she would be tortured in the country of removal." *Herrera-Martinez v.*

---

[3] We also reject Marquez-Cruz's argument that the IJ decision rejecting her PSGs must be found erroneous because the IJ relied upon *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) (*Matter of A-B- I)* to find that her proposed PSGs were not cognizable. *Matter of A-B- I* was good law at the time of the IJ's 2020 decision but was vacated by the Attorney General in 2021. *See Matter of A-B-*, 28 I. & N. Dec. 307, 309 (A.G. 2021) (*Matter of A-B- III)*. The Board acknowledged the vacatur in its decision but held that "remand [was] not necessary as there is no indication that the [IJ] relied on *A-B- I* . . . in her analysis. Rather, the [IJ] based her decision on the lack of evidence and argument on the issue of cognizability." J.A. 6. Although we agree with the Board's determination on this point, we also note that the Attorney General has now overturned *A-B-III* and instructed the agency to adhere to *Matter of A-B- I. See Matter of S-S-F-M-*, 29 I. & N. Dec. 207, 207 (A.G. 2025).

*Garland*, 22 F.4th 173, 185 (4th Cir. 2022) (cleaned up).  "Torture is (1) any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person in a manner that is (2) by or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (cleaned up). "The agency's factual findings—including its predictions about the likelihood of future mistreatment and government acquiescence—are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ponce-Flores v. Garland*, 80 F.4th 480, 484 (4th Cir. 2023) (cleaned up).

When Marquez-Cruz left El Salvador in 2014, she had successfully obtained restraining orders against Zetino and his wife.  The police had also responded to her calls for assistance.  Regarding the 2006 rape, the police took statements and forensic evidence, but there was insufficient evidence to support Marquez-Cruz's suspicion that Zetino had sent MS-13 gang members to rape her.  The local police arrested the MS-13 members who raped her, albeit for other reasons, and there is no evidence that Marquez-Cruz was threatened by them after the 2006 rape or after they escaped custody.  Regarding the 2014 incident, Marquez-Cruz could not identify the people who came to her door and the police were already actively searching for Zetino in connection with his MS-13 gang activities. Also, at the time of the hearing before the IJ in 2020, Marquez-Cruz had no knowledge of Zetino's whereabouts and did not know whether he was in police custody, nor had she sought any information about him from her family members in El Salvador.

After engaging with the entire record, including the relevant country conditions evidence and the police responses to Marquez-Cruz's complaints, the IJ found that

10

Marquez-Cruz had failed to show that she faces a particularized threat or that, if made aware of torture, government officials would not take action or would be willfully blind to any harm suffered. The Board agreed. Having independently reviewed the record, we conclude that the evidence does not compel a ruling contrary to the relevant administrative factual findings and that substantial evidence supports the denial of relief.

IV.

For the foregoing reasons, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION FOR REVIEW DENIED*