**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 25-1156**

─────────────

MANJEL ARTURO VALERIO OGAZ,

        Petitioner,

    v.

TODD BLANCHE, Acting Attorney General,

        Respondent.

─────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────────

Submitted:  February 25, 2026                    Decided:  June 23, 2026

─────────────

Before KING, Circuit Judge, and TRAXLER and KEENAN, Senior Circuit Judges.

─────────────

Petition for review denied by unpublished per curiam opinion.

─────────────

**ON BRIEF:**  Arnedo S. Valera, LAW OFFICES OF VALERA & ASSOCIATES P.C., Fairfax, Virginia, for Petitioner.  Brett A. Shumate, Assistant Attorney General, John S. Hogan, Stefanie A. Svoren-Jay, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Manjel Arturo Valerio Ogaz ("Ogaz") petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing the appeal of the Immigration Judge's ("IJ") denial of his applications for statutory withholding of removal under the Immigration & Nationality Act ("INA"), protection under the Convention Against Torture ("CAT"), and cancellation of removal under 8 U.S.C. § 1229b(b). Finding no reversible error, we deny the petition for review.

I.

The record developed before the IJ shows that Ogaz, a native and citizen of Mexico, illegally entered the United States in the fall of 1999. He has remained in this country continuously since his illegal entry. He has never been married, but he has two children who are United States citizens.

Ogaz testified that his father, a police officer in Parral, Chihuahua, Mexico, was shot and killed on January 1, 1992. Ogaz was approximately 10 years old at the time. According to a newspaper clipping submitted as evidence, Ogaz's father was shot by Eduardo Montanez, a soldier in the military, after Montanez "became upset due to the closing of [the bar] where he was having some drinks after the time allowed for drinking." J.A. 685. But Ogaz testified that his mother told him that Montanez murdered his father because he had refused to work with a Mexican cartel. The police responded to the murder and took a report, but Ogaz does not believe the killer was prosecuted. Ogaz does not know the name of the cartel. He does not know what happened to Montanez, knows nothing else about him, and has never been contacted by Montanez or any other member of any cartel.

2

Approximately eight months after the murder, Ogaz's mother moved the family to Chihuahua, Chihuahua—approximately three hours away from Parral. Ogaz testified that this was because they heard rumors that something might be done to them. In 1999, seven years after the murder and the move, Ogaz illegally entered the United States, at the age of 17. Ogaz testified that he left Mexico because his younger siblings heard rumors from unnamed people in local bars that cartel members were looking for Ogaz. At some point prior to 2010, Ogaz's mother also entered the United States for work. Ogaz's siblings remained in Mexico. From 1992 to 2010, no one harmed, directly threatened, or approached Ogaz or his family members. In 2010, Ogaz's sister was shot in the city of Chihuahua. She survived the shooting. The police investigated the shooting, but the assailant was never identified. Ogaz believes his sister's shooting was tied to his father's murder, but he acknowledges that there is no proof that the two incidents are related. Ogaz's siblings continue to live in Mexico and, with the exception of the 2010 shooting, neither have been harmed or threatened by anyone.

On May 2, 2013, the Department of Homeland Security ("DHS") initiated removal proceedings by serving a Notice to Appear ("NTA"), charging Ogaz for being present in the United States without having been admitted or paroled. Ogaz admitted the factual allegations in the NTA, and the immigration judge sustained the charge of removability. On December 6, 2016, Ogaz filed an application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents, asserting that his removal would create "exceptional and extremely unusual hardship" for his two children. *See* 8 U.S.C. § 1229b(b)(1)(D). Approximately two months later, Ogaz filed a Form I-589

Application for Asylum and Withholding of Removal, and for protection under the CAT, based upon Ogaz's belief that he will be killed by a cartel if he returns to Mexico. Following the hearing, the IJ denied Ogaz's applications. The BIA subsequently adopted and affirmed the decision of the IJ and dismissed Ogaz's appeal. Ogaz now petitions this court for review of the agency's decision.[1]

Where, as here, the BIA adopts and affirms the IJ's decision and supplements it with its own opinion, we review both decisions. *See Joshi v. Garland*, 112 F.4th 181, 189 (4th Cir. 2024). "But our review is limited to the grounds upon which the [BIA] relied." *Id.* We review the agency's legal questions de novo and its factual determinations "under the highly deferential substantial-evidence standard." *Id.* Review for substantial evidence means that the agency's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary, and this Court may not reweigh evidence." *Id.* (cleaned up); *see also* 8 U.S.C. § 1252(b)(4)(B).

## II.

## A.

We begin with Ogaz's application for withholding of removal. To prevail on a claim for asylum or withholding of removal, the applicant must establish:

> (1) that the applicant has suffered past persecution or has a well-founded fear of future persecution; (2) that the persecution is on account of his race, religion, nationality, membership in a particular social group ["PSG"], or political opinion; and (3) that the persecution is perpetrated by an

---

[1] The IJ denied Ogaz's application for asylum because it was untimely. Ogaz conceded the same and has not appealed this ruling.

4

organization that his home country's government is unable or unwilling to control."

*Portillo Flores v. Garland*, 3 F.4th 615, 626 (4th Cir. 2021) (cleaned up).  An applicant who relies "on membership in a PSG must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."  *Guardado v. Bondi*, 147 F.4th 432, 437 (4th Cir. 2025) (cleaned up).  "Persecution occurs on account of a protected ground if that ground serves as at least one central reason for the feared persecution."  *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 824 (4th Cir. 2020) (cleaned up).  "A central reason is not necessarily *the* central reason or even a dominant central reason, but it must be more than incidental, tangential, superficial, or subordinate to another reason for harm."  *Id.* (cleaned up).  Also, "it is well settled that withholding of removal covers a narrower . . . set of circumstances than asylum."  *Yi Ni v. Holder*, 613 F.3d 415, 427 (4th Cir. 2010).  "[A]n asylum applicant need only establish a well-founded fear of persecution, whereas the eligibility threshold for withholding of removal is even higher because the applicant must demonstrate a 'clear probability' of persecution."  *Id.* (cleaned up).

Ogaz claims that he suffered past persecution, and has a well-founded fear of future persecution, on account of his membership in the nuclear family of his father, who he believes was murdered for his refusal to participate in a Mexican cartel.  As noted above, he does not know the identity of the cartel and has never been personally threatened by anyone.  However, he claims that his mother relocated them seven months after the 1992 murder because she heard "rumors" that they would be harmed by the cartel; and that he

5

illegally entered the United States in 1999 because his siblings heard "rumors" that the unknown cartel was looking for him.

The IJ found that Ogaz had failed to show past harm rising to the level of persecution. Specifically, the IJ observed that "[n]o one physically harmed [Ogaz] while he lived in Mexico," and that Ogaz admitted that no one has "ever directly threatened him, issued threats by phone, [come] to his home, or stopped him on the street." J.A. 72. The IJ found that the "rumors" that unknown individuals from an unknown cartel were looking for Ogaz were insufficient to show past harm that rises to the level of persecution.

Having failed to establish past harm rising to the level of persecution on account of a protected ground, Ogaz was not entitled to the presumption of future persecution. *See* 8 C.F.R. § 1208.16(b)(1). And the IJ found that Ogaz had also failed to meet his burden of proving that he had a well-founded fear of future persecution if he were removed to Mexico. Although the family-based PSG was legally cognizable, *see Salgado-Sosa v. Sessions*, 882 F.3d 451, 457 (4th Cir. 2018), Ogaz failed to demonstrate that it was more likely than not that he would face harm in Mexico on account of his relationship with his father. The IJ found that the evidence that Ogaz's father's murder was connected to a cartel was speculative and contrary to the single article discussing the murder. Moreover, the passage of time since the 1992 murder of his father, the lack of evidence that his sister's shooting nearly two decades later was related to the murder, and the lack of any evidence that Ogaz or his family had ever been directly threatened, rendered it unlikely that Ogaz would face a future threat when removed. The BIA affirmed the IJ's determination that the 1992 murder of Ogaz's father did not constitute persecution of Ogaz, as well as the IJ's

6

finding that Ogaz had failed to demonstrate a clear probability of future persecution. In particular, the BIA noted that Ogaz had failed to demonstrate that it is more likely than not that he would be persecuted on account of his membership in the nuclear family of his father, "given the passage of time since the 1992 murder of his father and the paucity of evidence regarding any current likelihood of harm." J.A. 4.

We find no error in the agency's denial of Ogaz's withholding of removal application. Substantial evidence supports the agency's determination that Ogaz failed to establish past persecution or a clear probability that he will face persecution in the future, and no "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). As the agency observed, Ogaz had no personal encounters with any purported cartel members in Mexico. He received no direct threats of harm or death from anyone in the seven years between his father's murder and his illegal entry into the United States. He also received no threats of harm or death during the two decades that elapsed between his illegal entry and the hearing before the IJ. And apart from his sister's shooting, which the IJ found was more likely a random act of violence, his siblings have continued to live in Mexico without threats or harm from any cartel members.[2] Accordingly, we deny

---

[2] Ogaz originally sought withholding of removal based also upon his membership in the purported PSG as a Mexican deportee. The IJ found that the PSG of "returning Mexican deportees" was not legally cognizable and the BIA agreed. Ogaz has not appealed this ruling.

the petition for review of the agency's denial of Ogaz's application for withholding of removal. [3]

## B. CAT

For many of the same reasons, we also deny Ogaz's petition for review of the agency's denial of his claim for relief under the CAT. To succeed on this claim, Ogaz was required to "show that it is more likely than not that . . . []he would be tortured in the country of removal." *Herrera-Martinez v. Garland*, 22 F.4th 173, 185 (4th Cir. 2022) (cleaned up). "Torture is (1) any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person in a manner that is (2) by or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (cleaned up). After engaging all the evidence, including the country conditions evidence, the IJ found that Ogaz failed to show that he faces a particularized threat if he returns to Mexico or that, if made aware of torture, government officials would not act or would be willfully blind to any harm suffered. The BIA affirmed, noting in particular that Ogaz had not demonstrated that anyone was currently searching for him or that he is at risk of torture.

Having independently reviewed the record, we conclude that the evidence does not compel a ruling contrary to the relevant factual findings and that substantial evidence supports the denial of relief. Nothing in the record compels the conclusion that Ogaz is

---

[3] We summarily reject Ogaz's argument that the BIA failed to adequately disclose the standard of review it utilized when reviewing the IJ's past persecution ruling, rendering meaningful review impossible. As Ogaz reluctantly concedes, the BIA did, in fact, state the proper standard of review immediately prior to addressing the IJ's findings and conclusions.

8

more likely than not to be tortured by or with the consent or acquiescence of the Mexican authorities if he is removed to his home country.

### III.

Finally, Ogaz challenges the agency's denial of his application for cancellation of removal. The Attorney General may cancel removal of an applicant who meets four statutory criteria. 8 U.S.C. § 1229(b)(1)(A)-(D). Specifically, the applicant must (1) have been physically and continually present in the United States for at least 10 years; (2) have demonstrated good moral character during that time; (3) have not committed a disqualifying offense; and (4) show that his "removal would result in exceptional and extremely unusual hardship" to his citizen or lawful permanent resident spouse, parent, or child. 8 U.S.C. § 1229b(b)(1). Under 8 U.S.C. § 1252(a)(2), we are only permitted to review the agency's determination as a mixed question of fact and law, applying the legal standard to the settled facts found by the agency. *See Wilkinson v. Garland*, 601 U.S. 209, 225 (2024); *Cortes v. Garland*, 105 F.4th 124, 133-34 (4th Cir. 2024).

The sole issue on appeal is whether Ogaz established that his removal would result in "exceptional and extremely unusual hardship" to his two children. "For hardship to be exceptional and extremely unusual, it must be substantially beyond the ordinary hardship that would be expected when a close family member is removed." *Cortes*, 105 F.4th at 134 (cleaned up). The IJ found that Ogaz failed to make the requisite showing. The BIA agreed. And so do we.

Ogaz has two United States citizen children. His daughter, Talia, was born on June 21, 2005. She was 16 years old at the time of the hearing. Ogaz and Talia's mother share

9

joint custody of Talia.  Talia has a learning disability and struggles with reading. Accordingly, she had an Individualized Education Plan ("IEP") in school.  Talia's mother lives in New Market, Virginia.  A little over two years prior to the hearing, Talia began living with Ogaz.  At the time of the hearing, she was vacationing with her mother.  Ogaz's son, Damian, was born on July 19, 2013.  He was 8 years old at the time of the hearing. Ogaz and Damian's mother also share joint custody.  Damian lives with his mother in Richmond, Virginia, and Ogaz occasionally sees him on weekends.  Damian has a speech impairment and becomes distracted in school.  He also has an IEP.  Both mothers are citizens of the United States and will not allow the children to move to Mexico.  Ogaz requested cancellation of removal because he believes it will be difficult for him to secure employment in Mexico and, even if he could secure employment, he believes he will not be able to earn as much money as he does in the United States, rendering him unable to maintain the level of financial support he has been providing for his children.  In sum, he seeks cancellation of removal because he believes his children will suffer emotionally, psychologically, and financially if he is removed to Mexico.

The IJ found that Ogaz failed to prove that he would be unable to obtain a comparable job and wages to support his children, and that, in any event, "economic detriment alone is insufficient to support a finding of exceptional and extremely unusual hardship."  J.A. 79; *see In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002) ("We do not dispute the fact that economic conditions in Mexico are worse than those in this country.  However, it has long been settled that economic detriment alone is insufficient to support even a finding of extreme hardship.").

10

The IJ addressed the special education needs of the children as well and found that Ogaz's removal would not deprive his children of the resources to meet those needs. Both children would remain in the United States with their mothers (who share joint custody with Ogaz) and would be able to continue their schooling with their IEPs and special education classes. The IJ also recognized the difficulty Ogaz's children would face following their physical separation from their father but found that Ogaz had failed to demonstrate "that the hardship [his children] would face is substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." J.A. 80 (cleaned up). And, finally, the IJ considered the emotional and psychological impact to the children caused by Ogaz's removal to Mexico. However, the children had not testified or submitted statements about how their father's removal would impact them, nor were there any records from a medical professional evaluating the potential impact Ogaz's removal might have upon the children. The BIA affirmed.

We have reviewed the administrative record in conjunction with the arguments advanced by Ogaz. Applying the settled facts to the legal standard, the agency did not err in concluding that the hardship to Ogaz's children would not be "substantially beyond the ordinary hardship that would be expected when a close family member is removed," *Cortes*, 105 F.4th at 133, and that Ogaz failed to establish that his removal "would result in exceptional and extremely unusual hardship" to his children, 8 U.S.C. § 1229b(b)(1)(D). Accordingly, we deny the petition for review of the agency's denial of Ogaz's petition for cancellation of removal as well.

11

IV.

For the foregoing reasons, we deny the petition for review.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION FOR REVIEW DENIED*